**Affirmed and Opinion filed August 8, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-12-00637-CV

**MILLSTONE INVESTMENT & MANAGEMENT, L.L.C., Appellant**

**V.**

**BNC RETAX, L.L.C., Appellee**

**On Appeal from the 133rd District Court
Harris County, Texas
Trial Court Cause No. 2011-09092**

## O P I N I O N

In a single issue, Millstone Investment & Management, L.L.C. contends the trial court erred by denying Millstone's motion for summary judgment and granting BNC Retax, L.L.C.'s cross-motion for summary judgment. We affirm.

# I. BACKGROUND

In 2002, TTSF, L.P. #2 owned an apartment complex ("the Property") and granted a lender a deed of trust on the Property to secure a promissory note. In 2006, TTSF was delinquent on taxes from the 2005 tax year owed to Alief Independent School District ("AISD") and Harris County.[1] Pursuant to the Tax Code, on January 1 of each year, a tax lien attaches to property to secure payment of all taxes, penalties, and interest ultimately imposed for the year on the property. *See* Tex. Tax Code Ann. § 32.01 (West 2008) (unchanged since 1999). The tax lien is given priority over almost all antecedent and subsequent property interests, except for a few interests inapplicable in this case. *See id.* § 32.05 (West 2008) (unchanged since 2005). Section 32.06 of the Tax Code provides that a tax lien may be transferred to a person who pays taxes with the property owner's permission.

In 2006, TTSF entered into an agreement with RETax Funding L.P., whereby RETax agreed to pay the delinquent taxes. In exchange, TTSF granted RETax a deed of trust on the Property and agreed to follow the procedures of section 32.06 for the transfer of AISD's and Harris County's tax liens to RETax. Pursuant to the requirements of section 32.06, TTSF filed sworn documents with the tax collectors for AISD and Harris County in which TTSF swore RETax was authorized to pay the delinquent taxes on TTSF's behalf and the taxing units were authorized to transfer their tax liens to RETax. Shortly thereafter, RETax paid the delinquent taxes. The tax collector for AISD certified in a document that RETax had paid the taxes and AISD's tax lien was transferred to RETax. Attached to this document was the tax collector's seal of office, and the document was

---

[1] For simplicity, we do not give the exact names of the taxing units to which TTSF owed delinquent taxes but refer to them as "AISD" and "Harris County."

acknowledged before a notary public. Similarly, the tax collector for Harris County certified in a document that RETax had paid the taxes and Harris County's tax lien was transferred to RETax. This document also contained the tax collector's seal but was not acknowledged before a notary public. Neither of the tax collectors' documents was sworn, and we will refer to the documents as "the Certifications." The parties do not dispute that TTSF's sworn documents and the tax collectors' Certifications were properly filed in the real property records.

In April 2010, the Property was sold at a foreclosure sale pursuant to the 2002 deed of trust. Millstone purchased the property at the sale. In September 2010, RETax assigned the tax liens to BNC. After BNC filed an application to foreclose on the property pursuant to the tax liens, Millstone filed suit against BNC, seeking a declaration that the 2010 foreclosure sale extinguished the tax liens. Millstone filed a traditional motion for summary judgment, arguing that BNC's tax liens were invalid because the tax collectors' Certificates were not sworn as required by section 32.06. BNC filed a cross-traditional motion for summary judgment, arguing that section 32.06 does not require sworn certificates. In a final judgment, the trial court denied Millstone's motion and granted BNC's motion, declaring that BNC's tax liens are valid and awarding attorney's fees to BNC.

## II. SUMMARY JUDGMENT

In its sole issue, Millstone claims it owns the Property unencumbered by any liens because BNC's purported tax liens are invalid due to the tax collectors' failure to swear to the veracity of their Certificates as required by section 36.02.

3

## A. Standard of Review

A party moving for traditional summary judgment must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant establishes a right to summary judgment, the burden shifts to the non-movant to present evidence raising a material fact issue. *See M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

We review a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In reviewing the trial court's rulings on cross-motions for summary judgment, we must consider all summary-judgment evidence, determine all issues presented, and render the judgment the trial court should have rendered. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000). We may consider evidence presented by both parties in determining whether to grant either motion. *Expro Americas, LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 919 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

## B. Former Section 32.06 and Standards of Statutory Construction

As noted above, section 32.06 provides that a tax lien may be transferred to a person who pays the taxes with the property owner's permission. Here, the purported tax-lien transfers occurred in 2006, and the parties agree the version of section 32.06 in effect in 2006 applies. The 2006 version of section 32.06 reflected changes from the 2005 legislative session.[2] All citations to section 32.06 in this opinion refer to the 2006 version.

---

[2] *See* Act of May 20, 2005, 79th Leg., R.S., ch. 406, § 1, 2005 Tex. Gen. Laws 1098,

4

Under section 32.06, a property owner may authorize another person (the transferee) to pay any delinquent taxes imposed by a taxing unit if the property owner filed with the tax collector for the taxing unit a sworn document authorizing transfer of the tax lien and describing the property. Tex. Tax Code Ann. § 32.06(a–1). The tax collector's responsibilities are governed by section 32.06(b):

> (b) If a transferee authorized to pay a property owner's taxes pursuant to Subsection (a-1) pays the taxes and any penalties and interest imposed, the collector shall issue a tax receipt to that transferee. In addition, *the collector or a person designated by the collector shall certify on the sworn document that payment of the taxes and any penalties and interest on the described property and collection costs has been made by the transferee on behalf of the property owner liable for the taxes when imposed and that the taxing unit's tax lien is transferred to that transferee. The collector shall attach to the sworn document the collector's seal of office or sign the document before a notary public and deliver the sworn document, a tax receipt, and the affidavit attesting to the transfer of the tax lien to the transferee within 30 days. The sworn document, tax receipt, and affidavit attesting to the transfer of the tax lien may be combined into one document*. The collector shall conspicuously identify in the applicable taxpayer's account the date of the transfer of a tax lien transferred under this section.

*Id.* § 32.06(b) (emphasis added). "To be enforceable, a tax lien transferred as provided by this section must be recorded with the sworn statement and affidavit attesting to the transfer of the tax lien as described in Subsection (b) in the deed

---

1098; Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 13, 2005 Tex. Gen. Laws 3717, 3720. These amendments were effective September 1, 2005 to August 31, 2007. The statute has been amended several times since. *See* Act of May 22, 2007, 80th Leg., R.S., ch. 1220, § 3, 2007 Tex. Gen. Laws 4111, 4116; Act of May 25, 2007, 80th Leg., R.S., ch. 1329, § 1, 2007 Tex. Gen. Laws 4484, 4484; Act of May 11, 2009, 81st Leg., R.S., ch. 87, § 22.006, 2009 Tex. Gen. Laws 208, 334; Act of May 12, 2009, 81st Leg., R.S., ch. 104, § 1, 2009 Tex. Gen. Laws 402, 402; Act of May 26, 2009, 81st Leg., R.S., ch. 1382, § 4, 2009 Tex. Gen. Laws 4340, 4341; Act of May 23, 2011, 82nd Leg., R.S., ch. 622, § 1, 2011 Tex. Gen. Laws 1498, 1498.

records of each county in which the property encumbered by the lien is located." *Id.* § 32.06(d).

Statutory construction is a question of law we review de novo. *City of Round Rock v. Rodriguez*, 399 S.W.3d 130, 133 (Tex. 2013). In construing a statute, we must determine and give effect to the Legislature's intent, beginning with the plain and common meaning of the statute's words. *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the Legislature chose. *See St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We employ the common usage rule, meaning words and phrases shall be read in context and construed according to the rules of grammar and common usage, but we will also give words a technical meaning if such a meaning has been provided by legislative definition or as a term of art. *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 (Tex. 2012) (citing Tex. Gov't Code Ann. § 311.011). Every word in a statute is presumed to have been used for a purpose and, if reasonable and possible, is to be given effect. *Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000). If a statute is unambiguous, we adopt the interpretation supported by its plain language, unless such an interpretation would lead to absurd results. *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

## C. Analysis

This dispute centers on the meaning of the word "affidavit" as used in section 32.06(b). Millstone contends the ordinary meaning of "affidavit" supplied in the Government Code applies, which is "a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office." Tex. Gov't

Code Ann. § 312.011(1) (West 2013). Because it is undisputed that the Certifications were not sworn to by the tax collectors before a person authorized to administer oaths, Millstone argues the tax collectors did not swear to the tax-lien transfers in affidavits as required by section 32.06. According to Millstone, the lack of sworn affidavits conclusively establishes the tax-lien transfers are invalid because section 32.06(d) states, "To be enforceable, a tax lien transferred as provided by this section must be recorded with the sworn documents and affidavit attesting to the transfer of the tax lien as described in Subsection (b)." Tex. Tax Code Ann. § 32.06(d).

BNC counters that section 312.011 of the Government Code provides that its definitions apply "unless a different meaning is apparent from the context of the statute in which the word appears." Tex. Gov't Code Ann. § 312.011. BNC argues the context in which "affidavit" appears in section 32.06(b) indicates that the Legislature did not intend for the ordinary meaning of the word to apply. We agree.

Under section 32.06(b), after the transferee pays the taxes, the tax collector shall issue a tax receipt to the transferee. Tex. Tax Code Ann. § 32.06(b). The tax collector then has a certification duty, requiring him to certify on the sworn document that all required taxes and costs have been paid by the transferee on behalf of the property owner *and* that the taxing unit's tax lien is transferred to the transferee. *Id.*[3] The tax collector also shall attach to the sworn document his seal

---

[3] On appeal, the parties do not debate the meaning of the requirement that the tax collector make his certifications and attach his seal or sign before a notary public "on the sworn document." *See* Tex. Tax Code Ann. § 32.06(b). We note that, in construing the 2006 version of section 32.06, our court recently held that this requirement does not literally mean the tax collector must make his certifications and attach his seal on or sign the physical sworn document provided by the property owner; it was sufficient that the certifications and seal or signature were made on a separate document. *See Avelo Mortg. LLC v. Infinity Capital, LLC*, 366 S.W.3d 258, 263 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

of office *or* sign the document before a notary public.  *Id.*  Finally, the tax collector shall "deliver the sworn document, a tax receipt, and *the affidavit attesting to the transfer of the tax lien* to the transferee."  *Id.* (emphasis added).

In this final requirement, the word "affidavit" is modified by the word "the" and the phrase "attesting to the transfer of the tax lien."  *See Combs*, 340 S.W.3d at 441 ("Language cannot be interpreted apart from context.").  In this context, use of the definite article "the" instead of the indefinite article "an" means "affidavit" is something already familiar to the reader.  *See, e.g.*, *Grafmuller v. Com.*, 698 S.E.2d 276, 280 (Va. Ct. App. 2010) (citing several cases discussing difference between definite and indefinite articles and holding "*the* child" as used in sentencing portion of statute referred to "any person [defendant] knows or has reason to believe is *a* child" as used in offense portion of statute).  The term "sworn document" as used in section 32.06 also follows this grammatical rule.  Section 32.06(a-1) refers to "a sworn document" because it is the first mention of this particular document in the statute.  Tex. Tax Code Ann. § 32.06(a-1).  However, in section 32.06(b), the same document is referred to as "the sworn document" because it is already familiar to the reader.  *Id.* § 32.06(b).

Because "the affidavit" references something already identified, we look to the preceding language to determine what this is.  According to the preceding language, the tax collector is required to certify[4] the transferee paid the taxes *and that the tax unit's lien is transferred to the transferee* and attach his seal of office *or* sign the document before a notary public.  Based on these requirements, "the

---

[4] "Certify" means "[t]o authenticate or verify in writing."  Black's Law Dictionary 220 (7th ed. 1999).  There is no requirement that a person be placed under oath before he may "certify" something.  For example, under the Government Code definition of "affidavit," a notary public certifies that the affiant was under oath but there is obviously no requirement that the notary public also be under oath to make this certification.  *See* Tex. Gov't Code Ann. § 312.011(1).

8

affidavit" is further modified by the phrase "attesting to the transfer of the tax lien." Accordingly, "the affidavit attesting to the transfer of the tax lien" refers to a document which includes the tax collector's certification of tax payment by, and transfer of the tax lien to, the transferee and either bears the tax collector's seal or is signed before a notary public. Absent is any requirement that the "the affidavit attesting to the transfer of the tax lien" be sworn to by the tax collector. Therefore, we hold "the affidavit attesting to the transfer of the tax lien" is a document unique to section 32.06 and not subject to the Government Code definition of "affidavit."[5]

Furthermore, requiring "the affidavit attesting to the transfer of the tax lien" to be "signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office," Tex. Gov't Code Ann. § 312.011(1), would contradict the tax collector's option to *either* attach his seal to the document *or* sign it before a notary public. Tex. Tax Code Ann. § 32.06(b). We construe this option to mean the tax collector need not employ any services of a notary public (including administration of an oath) if the tax collector attaches his seal.

Millstone argues that attaching an official seal to a document or signing the document before a notary public are simply methods to authenticate the document, whereas swearing to the contents of a document serves the separate purpose of establishing the truth of the statements asserted therein. Thus, according to Millstone, the fact that the tax collector has the option to attach his seal or sign before a notary is unrelated to whether the document needs to be sworn. Millstone correctly notes Texas Rule of Evidence 902 provides that a document is self-

---

[5] Because the meaning of "the affidavit attesting to the transfer of the tax lien" is unambiguous, we need not refer to the legislative history cited by the parties. *See Ramco Oil & Gas, Ltd. v. Anglo Dutch (Tenge) L.L.C.*, 171 S.W.3d 905, 915 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

authenticating when it either bears a governmental seal and a signature purporting to be an attestation *or* is signed by a governmental employee in his official capacity before a public officer who certifies under seal that the signatory has official capacity and the signature is genuine. *See* Tex. R. Evid. 902(1)–(2). We agree that authentication and swearing to the truth of matters are separate legal concepts. Nevertheless, as we have determined, section 32.06(b) provides explicit instructions for how a tax collector is to certify that a tax lien has been transferred, and these instructions do not include swearing to the contents of the certification.

Next, Millstone notes the 2006 deed of trust from TTSF to RETax provided, "This Deed of Trust is given in conjunction with the Transfer of Tax Lien by [Harris County and AISD] . . . , and which Transfer of Tax Lien, including *affidavit* thereto, shall be recorded in the county in which the Mortgaged Property is located." (emphasis added). Millstone contends this language proves that RETax—the original purported tax-lien transferee and BNC's predecessor—understood that the tax collector was required to swear to the transfer in an affidavit. However, considering all provisions of the 2006 deed of trust as a whole, we conclude the reasonable interpretation of this language is that the parties thereto simply intended to comply with 32.06(d), requiring that "the sworn statement and affidavit attesting to the transfer of the tax lien" be recorded in the county in which the property is located for the tax-lien transfer to be enforceable. *See* Tex. Tax Code Ann. § 32.06(d); *see also id.* § 32.065(b) (version applicable in 2006) (requiring contract between property owner and transferee under section 32.06 shall provide for, *inter alia,* "recording of the sworn document and affidavit attesting to the transfer of the tax lien").

Millstone also analogizes section 32.06(b) to section 53.052 of the Property Code, which requires a person claiming certain liens to "file an affidavit with the

10

county clerk." Tex. Prop. Code Ann. § 53.052(a) (West 2007). Millstone contends courts have construed "affidavit" as used in section 53.052 to require a sworn statement, and we should apply the same interpretation to section 32.06(b). Millstone's contention ignores the context of "affidavit" as used in section 32.06(b). Furthermore, requirements for a section 53.052 affidavit are expressly delineated in the Property Code and include "a sworn statement of the amount of the claim." *See id.* § 53.054 (West 2007) (entitled "Contents of Affidavit").

Finally, Millstone argues case law pertaining to section 32.06 supports its position. In *Genesis Tax Loan Services., Inc. v. Kothmann*, the Supreme Court of Texas held that a tax-lien transfer complied with the 2004 version of 32.06. 339 S.W.3d 104, 106 (Tex. 2011). That version of the statute did not include the term "affidavit" but provided,

> [T]he collector shall certify on the sworn document that payment of the taxes and any penalties and interest on the described property has been made by a person other than the person liable for the taxes when imposed and that the taxing unit's tax lien is transferred to the person paying the taxes. *The collector shall attach to the document the collector's seal of office and deliver the document to the person paying the taxes*.

*Id.* at 108 (quoting Tex. Tax Code Ann. § 32.06(b) (2004 version)). The supreme court held, *inter alia*, (1) the absence of the tax collector's seal of office did not render the tax-transfer documents void because the tax collector did not yet have a seal and a notary public's seal was attached, and (2) the tax collector's failure to maintain copies of the tax liens did not invalidate the transfer. *Id.* at 110.

Although these holdings are inapposite to the present issue, Millstone emphasizes the supreme court's statement, "The statutory transfer process involves an authorization by the property owner and a certification by the tax collector. *These sworn documents* must be recorded for the lien transfer to be enforceable."

11

*Id.* (emphasis added). Relying on this language, Millstone argues the supreme court held that both the property owner's sworn document and the tax collector's certification must be sworn. However, we agree with BNC that the supreme court's word choice was non-precedential obiter dictum. *See Garza v. Slaughter*, 331 S.W.3d 43, 48 n.4 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (explaining difference between judicial dicta and obiter dicta). Additionally, *Kothmann* is not applicable to our case because we are concerned with a substantially different version of section 32.06(b).[6]

In sum, having determined that the 2006 version of 32.06(b) did not require the tax collectors to swear to the veracity of their Certifications, we overrule Millstone's sole issue and affirm the trial court's judgment.


/s/    John Donovan
       Justice

Panel consists of Justices Frost, Brown, and Donovan.

---

[6] Millstone also cites *WMC Mortgage Corp. v. Moss*, in which the First Court of Appeals interpreted the *Kothmann* court to hold a "tax collector's *sworn statement* made before a notary satisfied the requirements of Section 32.06(b) when the tax collector had no seal and therefore failed to attach his seal of office to the authorization." No. 01-10-00948-CV, 2011 WL 2089777, at *4 (Tex. App.—Houston [1st Dist.] May 19, 2011, no pet.) (mem. op.) (emphasis added). However, even if the tax collector in *Kothmann* swore to the facts of the tax-lien transfer, this does not mean such action was necessarily a requirement of the statute.