Evelyn V. Keyes, Justice
In this case involving liens for delinquent property taxes, Betty James, the owner of the subject property, contracted with the predecessor in interest of appellee Propel Financial Services, LLC, an entity *786 that paid delinquent taxes on James's behalf and received a transfer of the tax liens on the property. Several years later, after James had passed away, Harris County filed the underlying suit, seeking foreclosure of its tax liens on the property. Propel intervened, also seeking foreclosure of its liens, and appellant Robert Fenlon, who had purchased the property during the pendency of the suit, became a defendant. After a tax master made recommendations in the case, the trial court entered judgment in favor of Harris County and Propel, ordering foreclosure of their tax liens. With respect to Propel, the trial court awarded Propel $14,173.67 for "delinquent base tax" for the 2003-2007 tax years, $10,477.25 for "penalty & interest," and $6,304.22 for attorney's fees.
In five issues, Fenlon contends that (1) legally and factually insufficient evidence supports the trial court's finding that the base tax to which Propel is entitled is $14,173.67; (2) legally and factually insufficient evidence supports the finding that Propel had a valid tax lien for the 2006-2007 tax years; (3) legally and factually insufficient evidence supports the award of $10,477.25 in penalties and interest to Propel; (4) the award of $6,304.22 in attorney's fees to Propel is unreasonable and excessive; and (5) legally and factually insufficient evidence supports the finding that Fenlon is personally liable for the amounts awarded in the judgment.
We modify the judgment of the trial court and affirm as modified.
Background
Betty James owned a piece of residential property on Belarbor Street in southeast Houston. After several years' worth of property taxes had become delinquent, James entered into an agreement in September 2008 with Moncor, Inc.-the predecessor in interest of intervenor and appellee Propel Financial Services-in which Moncor agreed to pay James's delinquent taxes for the years 2003-2007 and assumed a tax lien on the property (the Note). In the Note, James agreed to re-pay Moncor $10,690.37 in principal, plus interest, with her monthly payment set at $171.82. The Note had a maturity date of October 1, 2018.
At the same time James signed the Note, she also executed a Deed of Trust. James agreed, among other things, to make all monthly payments under the Note and "not to grant another tax lien pursuant to" Texas Tax Code section 32.06. The Deed of Trust specifically defined what constituted an "event of default," including James's failure to timely make any payment under the Note, and it provided remedies for Moncor if a default occurred, including acceleration of the outstanding balance of the Note and foreclosure of the tax lien that Moncor held on the property. The Deed of Trust contained the following provision:
Grantor [James] represents that this deed of trust and the Note are given for the following purposes: The Grantor has requested and authorized the Lender [Moncor] to pay the ad valorem taxes, penalties, interest and collection costs assessed against the Property for [James's account number] for taxes on the Property that are not delinquent and taxes on the Property that are delinquent and due and owing by the Grantor to Harris County, Texas, and all other taxing units for which Harris County, Texas serves as the collecting agent and/or tax collector ... and for which the Harris County Tax Assessor Collector collects taxes (hereinafter collectively the "Taxing Units") and the Grantor has requested and authorized that tax collector for the Taxing Units (hereinafter the "Tax Assessor Collector") to *787 transfer the tax liens held by the Taxing Units securing the payment of all of the above described taxes to the Lender as is authorized by V.T.C.A., Tax Code § 32.06. The Note evidences the amount advanced by the Lender. This deed of trust does not waive the tax liens, and the tax liens and the lien and rights created by this instrument shall be cumulative.
Neither the Note nor the Deed of Trust expressly stated which tax years were covered by the agreement between James and Moncor.
James executed two affidavits "Authorizing Payment of Taxes and Transfer of Tax Lien": one for the 2003-2005 tax years, and one for the 2006-2007 tax years. These affidavits identified the property and authorized Moncor to pay the ad valorem taxes owed to various Harris County taxing units for the 2003-2005 tax years and the 2006-2007 tax years. James also authorized the Harris County Tax Assessor to transfer the tax liens held by the taxing units for these tax years to Moncor. On November 7, 2008, the Harris County Tax Assessor certified that Moncor had paid $4,386.82 in delinquent taxes for the 2006-2007 tax years on James's behalf, and the Tax Assessor transferred the tax lien for these years to Moncor. On March 17, 2015, the Tax Assessor certified that Moncor had paid $5,098.35 in delinquent taxes for the 2003-2005 tax years on James's behalf, and the Tax Assessor transferred the tax liens for these years to Moncor. The Note, Deed of Trust, James's affidavits, and the Tax Assessor's certifications were all filed in the Harris County property records.[1]
No provision was made in the Deed of Trust for Moncor's payment of any taxes on the property after the 2007 tax year. However, evidence in the record indicates that Moncor paid the ad valorem taxes on the property for the 2008-2009 tax years on August 31, 2010. The record does not include a certificate from the Harris County Tax Assessor transferring the tax liens for these two years to Moncor. There is no evidence that anyone paid the taxes on the property after the 2009 tax year, although Harris County and related entities continued to levy taxes on it.
James passed away in 2012 and her two sons became owners of the property. In July 2015, Harris County-on its own behalf and on behalf of the City of Houston, the Houston Independent School District, and the Houston Community College System-filed suit against James's sons and Propel to recover delinquent ad valorem taxes assessed against the property for tax years 2010-2014. Harris County named both of James's sons as defendants "in rem only" and stated that it did not seek a personal judgment against any defendant identified as "in rem only." Harris County alleged that it was owed a total of $9,908.74 in taxes, penalties, and interest for the 2010-2014 tax years. Harris County asserted tax liens against the property for the 2010-2014 tax years, and it sought foreclosure of its liens. Harris County also sought "personal judgment against Defendant(s) who owned the property on January 1 of the year for which the taxes were imposed for all taxes, penalties, interest, *788 and costs that are due or will become due on the property, together with attorney's fees and abstractor's fees."
James's sons appeared and filed an answer generally denying the allegations in Harris County's petition. Moncor's successor in interest, Propel, filed an answer and plea in intervention. Propel alleged that it held "a superior tax lien interest in the subject property" but that it was "not personally liable for any of the amounts or liens claimed" by Harris County. Propel alleged that taxes were assessed against the property, and the resulting tax liens were eventually transferred to Propel after it entered into the Note and Deed of Trust with James for payment of the taxes. It alleged that James had defaulted under the Note and Deed of Trust, and it therefore sought "a judgment of foreclosure against the Subject Property for delinquent taxes, together with penalties, interest, costs and fees, that are due Propel on the Subject Property." It alleged that, because James had defaulted under the Note, it "intervene[d] to seek foreclosure for all amounts owed Propel that are secured by its transferred tax lien." Propel did not allege the specific years for which it had paid James's delinquent taxes, nor did it identify the tax years for which it held a tax lien on the property. In its prayer for relief, Propel sought, among other things, "judgment for foreclosure [to] be entered in favor of Propel for the total amount due Propel under the [Note]" and an order of sale of the property.
On August 1, 2016, Harris County nonsuited its claim against Propel.
On September 8, 2016, Propel filed a selection of business records with the district clerk, supported by a business records affidavit completed by Propel's custodian of records. These records included the Note, the Deed of Trust, James's two affidavits authorizing Moncor's payment of her taxes for the 2003-2007 tax years, and the certifications from the Harris County Tax Assessor that Moncor had paid the 2003-2007 taxes on James's behalf and the tax liens had been transferred from the taxing units to Moncor.
Propel also filed with the district clerk a "Transferred Tax Lien Payoff Statement," dated September 8, 2016, reflecting a "total payoff amount" of $29,452.31. The itemization of this payoff amount reflected $14,173.67 in "Unpaid [Principal] Balance" and $9,538.64 in "Interest as of Balance Date." Propel also included several pages of James's "Mortgage History Ledger" and "Loan History." These documents reflected that James made some payments on the Note into 2012. These documents also reflected that, on August 31, 2010, $4,077.09 was added to the principal balance on the Note, bringing the outstanding balance at that time to $14,127.44. A "Tax Lien Transfer Account Statement," dated September 8, 2016, stated that the "Principal Remaining" on the Note was $14,173.67, with a "Past Due Amount" of $13,736.46.
In October 2016, during the pendency of the underlying lawsuit, appellant Fenlon purchased the property, subject to its liens and knowing that James had entered into the Note. On November 29, 2016, Harris County amended its petition to name Fenlon as a defendant. This amended petition did not name Fenlon as an "in rem only" defendant. Harris County also amended its petition to seek delinquent taxes, penalties, and interest for the 2015-2016 tax years, in addition to the 2010-2014 tax years. In this amended petition, Harris County named James's sons as defendants "in rem only" and named Fenlon as a defendant. Harris County did not seek any relief against Propel.
Fenlon, acting pro se, appeared and filed an answer. Fenlon generally denied the *789 allegations in Harris County's petition, as well as the allegations in Propel's petition in intervention. Fenlon also stated that he had "recently purchased the subject real property," and he requested that the trial court "limit any adverse finding against [him] to an in rem judgment."
The trial court referred the case to a tax master sitting in chancery. At a hearing before the tax master on March 3, 2017, Harris County offered into evidence certified tax statements for the 2010-2016 tax years, records of liens, and deed records. Fenlon did not challenge any of the evidence offered by Harris County.
Propel offered into evidence the Note, the Deed of Trust, documentation concerning James's authorization in 2008 to transfer the tax liens for the 2003-2007 tax years to Moncor, and certification from Harris County that Moncor had paid James's taxes for the years 2003-2007 and that the tax liens for these years had been transferred to Moncor. Propel's evidence included a "Transferred Tax Lien Payoff Statement," dated February 16, 2017, reflecting, among other things, $14,173.67 in "Unpaid [Principal] Balance" on the Note, $10,477.25 in "Interest as of Balance Date," $6,304.22 in attorney's fees, and a "total payoff amount" of $31,802.80.
Propel also offered evidence that, in addition to the taxes on the property that Moncor had paid for tax years 2003-2007, Moncor had also paid $4,077.09 for tax years 2008-2009. Propel submitted a tax receipt from the Harris County Tax Assessor and a cancelled check indicating that, on August 31, 2010, Moncor paid $4,077.09 for James's delinquent 2008-2009 taxes. Propel did not offer an affidavit from James authorizing this payment, which was outside the agreement reached by Moncor and James in 2008, nor did it offer a certificate from the Harris County Tax Assessor transferring the tax liens for the 2008-2009 tax years to Moncor. Propel also offered evidence of the attorney's fees that it had incurred over several years related to James's taxes. Fenlon stated that he had no objections to Propel's evidence at the time it was offered. Fenlon later stated during the hearing, "I believe that the evidence does not support-there's problems with the evidence, and it doesn't support [Propel's] claim of what is due."
During the hearing, Fenlon told the tax master that at the time he purchased the property the Note already existed and he knew of the Note at the time of the purchase. The attorney representing Harris County stated, "I think the biggest issue here is how much is owed on the note," and he asked Fenlon, "[H]ow much do you believe is owed on the note at this time?" Fenlon responded,
I believe it would be less than half of what they [Propel] are claiming. And there's a lot of unknowns. And I think it will be very difficult when we analyze things to really figure out what is owed, because there are a lot of problems with the way they've done the records, and an analysis of the records will bring this out.
Under questioning from the tax master, Fenlon stated his belief that "less than $15,000" should be owed on the Note. The only evidence presented at the hearing concerning the amount owed on the Note was the "Transferred Tax Lien Payoff Statement" submitted by Propel.
On July 16, 2017, the tax master recommended that the Harris County taxing units recover a total of $14,624.17 in "delinquent base tax," penalties and interest, and attorney's fees for the 2010-2016 tax years, and the master recommended that Propel recover a total of $30,955.14 in "delinquent base tax," penalties and interest, *790 and attorney's fees for the 2003-2007 tax years.
On July 24, 2017, Fenlon moved to appeal the tax master's recommendation to the trial court and requested that the district judge hear the case. He stated in his motion, "Propel seeks monies far in excess of the amount of the tax liens held by Propel including any appropriate interest and penalties."
In an amended answer filed on August 1, 2017, after he appealed the tax master's recommendation,[2] Fenlon raised several arguments to defeat Propel's recovery. Fenlon first argued that Propel had improperly charged James interest on unpaid interest, instead of charging interest solely on unpaid principal. He also argued that Propel had voluntarily paid James's taxes and thus was not entitled to reimbursement. Fenlon also pointed out that Propel never presented a tax lien certificate from the Harris County Tax Assessor certifying that Moncor had paid James's 2008 taxes and that the tax lien had been transferred to Moncor. Finally, Fenlon argued that Propel committed an anticipatory breach of the Note, improperly charged James late fees and other fees, and made other accounting errors. Fenlon again requested that the trial court "limit any adverse finding against [him] to an in rem judgment."
On August 11, 2017, the trial court signed a final judgment.[3] In the judgment, the trial court stated that the "adjudged market value" of the property was $49,406. The trial court ordered the Harris County taxing units to recover, for the 2010 through 2016 tax years, a total of $8,170.46 in "delinquent base tax," $6,249.44 in penalties and interest, and $204.27 in attorney's fees. The trial court awarded Propel, for tax years 2003 through 2007, $14,173.67 in "delinquent base tax," $10,477.25 in penalties and interest, and $6,304.22 in attorney's fees, for a total recovery of $30,955.14. The trial court's judgment did not mention the 2008 or 2009 tax years.
The trial court also ordered the taxing units to foreclose on its tax liens on the property, and the court ordered the property sold "for the adjudged market value of the property stated in the judgment or the aggregate amount of the judgments against the property, whichever is less."
Fenlon moved for a new trial, and this motion was overruled by operation of law. He did not request that the trial court file findings of fact and conclusions of law. This appeal followed.
Sufficiency of the Evidence
In his first issue, Fenlon contends that legally and factually insufficient evidence supports the trial court's finding that the delinquent base tax owed to Propel for the 2003 through 2007 tax years is $14,173.67. In his second issue, he contends that legally and factually insufficient evidence supports the finding that Propel had a valid tax lien for the 2006 and 2007 tax years. In his third issue, he argues that legally and factually insufficient evidence supports the finding that the penalties and interest owed to Propel for the 2003 through 2007 *791 tax years is $10,477.25. Fenlon also contends, in his fourth issue, that the award of $6,304.22 in attorney's fees is unreasonable and excessive.
A. Standard of Review
In an appeal of a judgment rendered after a bench trial, the trial court's findings of fact have the same weight as a jury's verdict, and we review the legal and factual sufficiency of the evidence supporting those findings by using the same standards to review jury verdicts. Ferrara v. Nutt , 555 S.W.3d 227, 235 (Tex. App.-Houston [1st Dist.] 2018, no pet.) ; see MBM Fin. Corp. v. Woodlands Operating Co. , 292 S.W.3d 660, 663 n.3 (Tex. 2009). When, as here, the trial court does not issue findings of fact and conclusions of law, all facts necessary to support the judgment and that are supported by the evidence are implied. BMC Software Belg., N.V. v. Marchand , 83 S.W.3d 789, 795 (Tex. 2002). When the appellate record includes the reporter's and clerk's records, implied findings are not conclusive, and they may be challenged for legal and factual sufficiency. Id.
When considering whether legally sufficient evidence supports a challenged finding, we consider the evidence that favors the finding if a reasonable fact finder could, and we disregard contrary evidence unless a reasonable fact finder could not. See Choice! Power, L.P. v. Feeley , 501 S.W.3d 199, 208 (Tex. App.-Houston [1st Dist.] 2016, no pet.) (citing City of Keller v. Wilson , 168 S.W.3d 802, 827 (Tex. 2005) ). We view the evidence in the light most favorable to the finding and indulge every reasonable inference to support it. Id. We may not sustain a legal sufficiency, or "no evidence," point unless the record demonstrates: (1) a complete absence of evidence of a vital fact; (2) that the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. Id. (citing City of Keller , 168 S.W.3d at 810 ). The trial court, as the fact finder in a bench trial, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. Id. If the evidence would allow "reasonable and fair-minded people to differ in their conclusions," we will not substitute our judgment for that of the fact finder. Id.
In conducting a factual sufficiency review, we consider and weigh all of the evidence. Id. at 209 ; see Crosstex N. Tex. Pipeline, L.P. v. Gardiner , 505 S.W.3d 580, 615 (Tex. 2016). When an appellant challenges the factual sufficiency of evidence supporting an adverse finding on which he did not have the burden of proof at trial, we set aside the verdict only if the evidence supporting the finding is so weak as to make the verdict clearly wrong and manifestly unjust. Choice! Power , 501 S.W.3d at 209.
B. Tax Lien Transfers
On January 1 of each year, a tax lien attaches to real property to secure the payment of all taxes, penalties, and interest ultimately imposed for the tax year on the property. TEX. TAX CODE ANN. § 32.01(a) (West 2015); Avelo Mortg., LLC v. Infinity Capital, LLC , 366 S.W.3d 258, 261-62 (Tex. App.-Houston [14th Dist.] 2012, no pet.). A property owner may authorize another person (the "transferee") to pay the taxes imposed on real property by filing with the collector for the taxing unit a sworn document authorizing payment of the taxes and describing the property. See Act of May 24, 2007, 80th Leg., R.S., ch. 1220, § 3, 2007 Tex. Gen. Laws *792 4111, 4116 (amended 2013) (current version at TEX. TAX CODE ANN. § 32.06(a-1) ); Act of May 25, 2007, 80th Leg., R.S., ch. 1329, § 1, 2007 Tex. Gen. Laws 4484, 4484 (amended 2013) (current version at TEX. TAX CODE ANN. § 32.06(a-1) ); Avelo Mortg. , 366 S.W.3d at 262. A tax lien may be transferred from the taxing unit to the person who pays taxes on behalf of the property owner. Act of May 25, 2007, 80th Leg., R.S., ch. 1329, § 1, 2007 Tex. Gen. Laws 4484, 4484 (amended 2013) (current version at TEX. TAX CODE ANN. § 32.06(a-2)(1) ); 1901 NW 28th Street Tr. v. Lillian Wilson, LLC , 535 S.W.3d 96, 100 (Tex. App.-Fort Worth 2017, no pet.).
If a transferee pays the taxes and any penalties and interest imposed, the collector for the taxing unit must issue a tax receipt to the transferee and must certify that the taxes have been paid by the transferee on the property owner's behalf and that the taxing unit's tax lien is transferred to the transferee. Act of May 25, 2007, 80th Leg., R.S., ch. 1329, § 1, 2007 Tex. Gen. Laws 4484, 4485 (amended 2013) (current version at TEX. TAX CODE ANN. § 32.06(b) ); Avelo Mortg. , 366 S.W.3d at 262 ; see also Genesis Tax Loan Servs., Inc. v. Kothmann , 339 S.W.3d 104, 110 (Tex. 2011) ("The statutory transfer process involves an authorization by the property owner and a certification by the tax collector."). The transferee shall record the transferred tax lien and the certification in the deed records of the county where the property is located. TEX. TAX CODE ANN. § 32.06(d). Section 32.06(e) provides that a transferee may not charge more than 18% interest per year on the funds advanced to the property owner and states that "[f]unds advanced are limited to the taxes, penalties, interest, and collection costs paid as shown on the tax receipt, expenses paid to record the lien, plus reasonable closing costs." Id. § 32.06(e). The transferee may foreclose on the tax lien. Act of May 25, 2007, 80th Leg., R.S., ch. 1329, § 1, 2007 Tex. Gen. Laws 4484, 4485 (amended 2013) (current version at TEX. TAX CODE ANN. § 32.06(c) ); see also TEX. TAX CODE ANN. § 32.065(c) (West 2015) ("Notwithstanding any other provision of this code, a transferee of a tax lien ... is subrogated to and is entitled to exercise any right or remedy possessed by the transferring taxing unit, including or related to foreclosure or judicial sale...."); ABN AMRO Mortg. Grp. v. TCB Farm & Ranch Land Invs. , 200 S.W.3d 774, 777 (Tex. App.-Fort Worth 2006, no pet.).
At any time after a property tax becomes delinquent, a taxing unit may file suit to foreclose the lien securing payment of the tax, to enforce personal liability for the tax, or both. TEX. TAX CODE ANN. § 33.41(a) (West 2015). In a suit to foreclose a delinquent tax lien, the taxing unit shall join each transferee of a tax lien under section 32.06. Id. § 33.445(a) (West 2015). After the transferee joins the suit, the transferee "may file its claim and seek foreclosure in the suit for all amounts owed the transferee that are secured by the transferred tax lien , regardless of when the original transfer of tax lien was recorded or whether the original loan secured by the transferred tax lien is delinquent." Id. (emphasis added).
C. Analysis
1. Finding of valid tax lien for 2006-2007 tax years
In his second issue, Fenlon contends that insufficient evidence supports the trial court's finding that Propel had a valid tax lien for the 2006-2007 tax years because there is no evidence in the record that James executed an affidavit authorizing the payment of taxes and transfer of the tax liens to Propel for these two tax years. He argues that, instead, the affidavits *793 from James included in the appellate record only authorize payment and transfer of the tax liens for the 2003-2005 tax years.
In addition to the clerk's record, the appellate record also contains a supplemental clerk's record. The supplemental clerk's record includes, among other things, a business records affidavit completed by Propel's custodian of records and forty-one pages of records, filed with the district clerk on September 8, 2016. These records include a "Transferred Tax Lien Payoff Statement" reflecting that the unpaid principal balance of the loan to James was $14,173.67, a payment ledger and loan history, a "Tax Lien Transfer Account Statement," the Note, and the Deed of Trust. Propel also filed an "Affidavit Authorizing Payment of Taxes and Transfer of Tax Lien," signed by James and notarized on September 25, 2008, and recorded in the Harris County property records. This affidavit lists Moncor's name and address, describes the property, and includes the following paragraph:
I (We) hereby request and authorize Moncor, Inc. dba Moncor Mortgage ... to pay the ad valorem taxes, penalties, interest and collection costs due and owing by me (us) to Harris [County], Texas and all other taxing units for which Harris [County], Texas serves as the collecting agent and/or tax collector and for which the Harris [County] Tax Assessor Collector collects taxes, Houston ISD, Harris County, Harris County Flood Control Dist[rict], Port of Houston Authority, Harris County Hospital District, Harris County Dep[artment] of Education, Houston Community College System, City of Houston for [James's account number] for the tax year 2006-2007 (collectively the "Taxes"), and upon the payment of said Taxes, I (we) request and authorize the Harris [County] Tax Assessor Collector to transfer the tax liens held by the Taxing Units securing the payment of said Taxes to Moncor, Inc. dba Moncor Mortgage as authorized by V.T.C.A. Tax Code § 32.06.
(Emphasis added.) Immediately following this affidavit is a certification from the Harris County Tax Assessor Collector that Moncor paid $4,386.82 on James's behalf for the 2006-2007 taxes years and that tax liens for these years were transferred to Moncor.
The record therefore includes evidence that James executed an affidavit authorizing Moncor to pay her delinquent property taxes for the 2006-2007 tax year and authorizing the transfer of the tax liens for these tax years to Moncor. See Act of May 24, 2007, 80th Leg., R.S., ch. 1220, § 3, 2007 Tex. Gen. Laws 4111, 4116 (amended 2013) (current version at TEX. TAX CODE ANN. § 32.06(a-1)(1) ) (stating requirements for document executed by property owner to authorize another person to pay property taxes imposed on owner's real property). The record also includes evidence that the Harris County Tax Assessor certified Moncor's payment of James's taxes for the 2006-2007 tax years, transferred the tax liens to Moncor, and recorded this certification in the Harris County property records. See Act of May 25, 2007, 80th Leg., R.S., ch. 1329, § 1, 2007 Tex. Gen. Laws 4484, 4485 (amended 2013) (current version at TEX. TAX CODE ANN. § 32.06(b) ) (requiring certification of payment and transfer of tax lien by county tax collector); Avelo Mortg. , 366 S.W.3d at 262 (stating that, under section 32.06, two documents were required to be recorded in county where property was located for tax lien transfer to be valid: sworn document authorizing transfer and tax collector's certified statement of payment and transfer).
*794 We hold that sufficient evidence supports the trial court's implied finding that Propel, as Moncor's successor in interest, had a valid tax lien for the 2006-2007 tax years. See Choice! Power , 501 S.W.3d at 208-09.
We overrule Fenlon's second issue.
2. Award of delinquent base tax, penalties and interest, and attorney's fees
In his first, third, and fourth issues, Fenlon challenges the trial court's award of delinquent base tax, penalties and interest, and attorney's fees to Propel.
At the hearing before the tax master, Propel submitted business records into evidence, including a "Transferred Tax Lien Payoff Statement." This document reflected that the "Unpaid [Principal] Balance" on the Note was $14,173.67, that the "Interest as of Balance Date" was $10,477.25," that Propel had incurred $6,304.22 in attorney's fees, and that the "total payoff amount" was $31,802.80. Propel also introduced as evidence the Note, the Deed of Trust, James's affidavits authorizing the payments and transfers of the tax liens, the required certifications from the Harris County Tax Assessor, the cancelled check reflecting Moncor's payment of James's 2008 and 2009 taxes, and affidavits relating to attorney's fees. Fenlon did not object at the time this evidence was introduced.
Later in the hearing, Fenlon stated, "I believe that the evidence does not support-there's problems with the evidence, and it doesn't support [Propel's] claim of what is due." The following exchange also occurred during the hearing:
Harris County: I think the biggest issue here is how much is owed on the note, and I would like to ask that question directly. How much do you believe-how much do you believe should be-how much do you believe is owed on the note at this time?
Fenlon: I believe it would be less than half of what [Propel is] claiming. And there's a lot of unknowns. And I think it will be very difficult when we analyze things to really figure out what is owed, because there are a lot of problems with the way they've done the records, and an analysis of the records will bring this out.
The Court: Okay.
Propel: Your Honor, do I need to continue with-
The Court: No. Mr. Fenlon, your objection as to the evidence [is] the fact that you understand that the note should be less than what is being presented, correct?
Fenlon: Yes.
The Court: How much should it be less? What are you talking about?
Fenlon: I would think it should be less than half the amount.
The Court: Give me a number.
Fenlon: Less than $15,000, it really-I don't have the data, the information to calculate it, what it should be because the records they are presenting are not correct, and there are unknowns.
Fenlon did not identify the specific ways in which he believed Propel's records were inaccurate. He did not raise any specific challenges to the validity of Propel's documents, nor did he provide a specific amount that, he believed, should be owed on the Note. Further, he raised no objection at the hearing to Propel's evidence on attorney's fees, and it was not until his motion for new trial that he argued that Propel sought unreasonable and excessive amounts in attorney's fees, although he did not specifically identify charges that he believed were duplicative or excessive.
*795 To preserve an issue for appellate review, the complaining party must show that he made his complaint to the trial court by a timely request, objection, or motion that stated the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint. TEX. R. APP. P. 33.1(a)(1). Fenlon's general statements at the hearing before the tax master that Propel's evidence did not support its claim and that Propel made errors in calculating the balance on the Note were not sufficiently specific to preserve any complaint concerning Propel's evidence. See ids="12125384" index="32" url="https://cite.case.law/sw3d/501/199/#p208">id.
Propel submitted evidence demonstrating that the outstanding principal balance under the Note was $14,173.67, that the penalties and interest that had accrued on the principal balance was $10,477.25, and that the attorney's fees it had incurred were $6,304.22. Fenlon presented no contradictory evidence. The trial court awarded these amounts to Propel in the final judgment. We therefore conclude that legally and factually sufficient evidence supported the amounts awarded to Propel in the final judgment.
We overrule Fenlon's first, third, and fourth issues.
Personal Liability
Finally, in his fifth issue, Fenlon contends that the trial court improperly found him personally liable for the judgment in this case. He argues that because he did not own the property on January 1 of any of the tax years addressed in the trial court's judgment, the judgment against him could only be "in rem" and the court erred to the extent that it found him personally liable. We agree.
Property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed. TEX. TAX CODE ANN. 32.07(a) (West 2015). At any time after a taxing unit's tax on property becomes delinquent, the taxing unit "may file suit to foreclose the lien securing payment of the tax, to enforce personal liability for the tax, or both." Id. § 33.41(a). If, in a suit to collect a delinquent property tax, the taxing unit seeks to enforce personal liability for the tax, the defendant may raise the affirmative defense that he did not own the property on January 1 of the year for which the tax was imposed. Id. § 42.09(b)(1) (West 2015); Hydrogeo, LLC v. Quitman Indep. Sch. Dist. , 483 S.W.3d 51, 60 (Tex. App.-Texarkana 2016, no pet.).
"One who purchases property does so subject to any delinquent taxes." Franz v. Katy Indep. Sch. Dist. , 35 S.W.3d 749, 754 (Tex. App.-Houston [1st Dist.] 2000, no pet.). However, the purchaser does not become personally liable for delinquent taxes; instead, the property may be subject to a lien to secure payment of the delinquent taxes. Id. ; State v. Lincoln Corp. , 596 S.W.2d 593, 595-96 (Tex. Civ. App.-Beaumont 1980, writ ref'd n.r.e.) ("It is well settled that one who purchases property against which taxes are delinquent does not become personally liable therefor in the absence of an express assumption of the tax indebtedness."); Leonard v. State , 242 S.W.2d 199, 200 (Tex. Civ. App.-San Antonio 1951, no writ) ("The defendant was not personally liable for taxes prior to the time that he purchased the property, and while the property is subject to a lien for all past due taxes the present owner is not personally liable for taxes which were assessed against the property prior to the time he purchased it.").
In its third amended petition, filed in November 2016, Harris County named four defendants, including Fenlon, James's *796 two sons, and another individual who had owned the property after James's sons and before Fenlon. For three of the defendants, Harris County included an indication of "(In Rem Only)," but it did not include this indication for Fenlon. Harris County also stated that it did not "seek any monetary relief or personal judgment against any defendant identified as In Rem Only hereinabove." Against these defendants, Harris County sought foreclosure of its tax liens for the 2010-2016 tax years. In its petition in intervention, Propel sought "judgment for foreclosure [to] be entered in favor of Propel for the total amount due Propel under the [Note]." In his answer and amended answer, Fenlon requested that the trial court limit any adverse judgment against him "to an in rem judgment."
The trial court's final judgment listed four defendants: as in Harris County's amended petition, three of the defendants were identified as "(In Rem Only)," but Fenlon was not. The trial court's judgment also stated, "IT IS ORDERED that Plaintiff Taxing Unit(s) shall not be granted any monetary relief against any defendant identified as IN REM ONLY." The judgment further ordered that the taxing units "do have and recover from the Defendant(s), as indicated above, the total sum of money due for taxes, penalties, interest, and attorney['s] fees" and also ordered foreclosure of the tax liens against the property.
It is undisputed that Fenlon purchased the property in October 2016 and that he, therefore, did not own the property on January 1 of any of the tax years for which Propel and Harris County held liens for delinquent taxes. The record contains no indication that Fenlon, when he purchased the property, expressly agreed to assume liability for the delinquent taxes. We conclude that, while Fenlon purchased the property subject to the delinquent taxes and the liens securing payment of the delinquent taxes, he did not become personally liable for the delinquent taxes. See Franz , 35 S.W.3d at 754. Thus, the trial court erred to the extent that it entered a personal judgment against Fenlon for the delinquent taxes. See ids="11076896" index="41" url="https://cite.case.law/sw3d/35/749/#p754">id. ; Lincoln Corp. , 596 S.W.2d at 595-96 ; Leonard , 242 S.W.2d at 200 ; see also Tierra Sol Joint Venture v. City of El Paso , 311 S.W.3d 492, 499 (Tex. App.-El Paso 2009, no pet.) ("Tax liens attach upon the land rather than upon the person, and a foreclosure suit is a proceeding 'in rem ' rather than 'in personam. ' ").
We sustain Fenlon's fifth issue.
Conclusion
We modify the judgment of the trial court to indicate that Fenlon is a defendant "in rem only." We affirm the judgment as modified.

On September 15, 2009, Moncor transferred the Note, Deed of Trust, and the tax liens to Moncor Tax Advisors, Inc. Moncor Tax Advisors then transferred the Note, Deed of Trust, and the tax liens to Intervenor Propel Financial Services, LLC, on July 11, 2014. Propel Financial Services transferred the Note, Deed of Trust, and tax liens to Propel Funding National 1, LLC, on April 1, 2016. The transfer documents were recorded in the Harris County property records. Propel Funding National 1, LLC appointed Propel Financial Services to act as its servicer, agent, and attorney-in-fact.

This document is file-stamped August 1, 2017. At the hearing before the tax master on March 3, 2017, Fenlon stated, "I have prepared a rebuttal which was basically a brief in support of my argument today. And I did it as a defendant's amended answer. I have just now served both the attorneys [for Harris County and Propel] with a copy of that. And I would like to submit it to the Court." It is unclear if the document to which Fenlon was referring at the hearing before the tax master is the same as the document entitled "Defendant's Amended Answer" that was filed on August 1, 2017.

The trial court's docket sheet reflects that the court did not hold a hearing before it signed the final judgment on August 11, 2017.