Opinion issued March 11, 2021



In The

# Court of Appeals

For The

## First District of Texas

————————————

### NO. 01-20-00090-CV

————————————

**PRINCE UCHENCHI NWAKANMA, Appellant**

**V.**

**UMAWA IMO AND IKEO IMO, Appellees**

On Appeal from the 240th District Court
Fort Bend County, Texas
Trial Court Case No. 17-DCV-246591

## MEMORANDUM OPINION

This is an appeal from a judgment for money damages entered after a bench trial in a suit for breach of contract. The contract at issue is a settlement agreement between attorney Prince Uchenchi Nwakanma and his former client, Umawa Imo.

Imo is the former owner of a physical therapy clinic. In 2009, Imo was indicted in federal district court for multiple counts of healthcare fraud arising from his clinic's fraudulent billing practices. Imo retained Nwakanma as counsel and provided him over $2 million for his defense. The case proceeded to trial, and Imo was convicted on all counts, sentenced to 327 months' confinement, and ordered to pay over $30 million in restitution.

Imo then filed a civil suit against Nwakanma in Texas state court, alleging that Nwakanma had misappropriated the funds provided for Imo's defense and committed various other breaches of his fiduciary duty. Imo also filed an attorney grievance complaint in Kansas, where Nwakanma was licensed to practice law.

During the pendency of the two proceedings, Imo and Nwakanma entered into a settlement agreement. Nwakanma agreed to pay Imo $425,000 in scheduled installments, and Imo agreed to dismiss his civil suit and to notify the Kansas State Bar that his dispute with Nwakanma had been resolved and that he would no longer participate in any proceeding relating to his grievance complaint.

After the parties signed the settlement agreement, Nwakanma made the initial installment payments, and Imo dismissed his civil suit and sent the required notice to the Kansas State Bar. But the Bar did not dismiss the disciplinary proceeding; instead, it continued to investigate the misconduct alleged by Imo as well as the circumstances surrounding Imo's decision to dismiss his grievance complaint. As a

2

result, Nwakanma refused to make any further installment payments, arguing that the dismissal of the disciplinary proceeding was a condition precedent to his duty to continue to perform under the settlement agreement.

Imo then filed the instant suit, asserting a single claim for breach of contract. After a bench trial, the trial court found Nwakanma liable for breach of the settlement agreement and entered judgment awarding Imo actual damages, liquidated damages, attorney's fees, costs, and pre- and post-judgment interest.

In four issues, Nwakanma argues that we should reverse the trial court's judgment in whole or in part because (1) the settlement agreement violates public policy and is therefore unenforceable, (2) the evidence is legally insufficient to show he breached the agreement, (3) the evidence is legally insufficient to show an additional party awarded damages by the judgment, specifically, Imo's wife, was a party to or beneficiary of the agreement, and (4) the liquidated damages provision is an unenforceable penalty.

We hold that (1) Nwakanma has failed to preserve his public policy complaint for review, (2) the evidence is legally sufficient to show Nwakanma breached the settlement agreement, (3) whether the evidence is sufficient to show Imo's wife is a party to or beneficiary of the agreement is irrelevant because the judgment, contrary to Nwakanma's understanding, does not award her damages, and (4) Nwakanma failed to preserve his liquidated-damages complaint for review.

3

Therefore, we affirm.

## Background

This appeal arises from a settlement agreement between a lawyer, Nwakanma, and his former client, Imo. The underlying dispute centered around Nwakanma's alleged misappropriation of funds provided for Imo's legal defense in a criminal prosecution in federal district court. The material facts are largely undisputed.

### *Imo is indicted for fraud and retains Nwakanma as counsel*

Umawa Imo is the former owner of City Nursing Services of Texas, a now-defunct physical therapy clinic that once operated in Houston, Texas. In 2009, Imo was indicted in federal district court for multiple counts of healthcare fraud arising from his involvement in a scheme by which CNS fraudulently billed Medicare and Medicaid for millions of dollars.

After his indictment, Imo was approached by Nwakanma, an attorney who was licensed to practice law in Kansas but resided and maintained a law office in Houston. Nwakanma and Imo are both members of Houston's Igbo Nigerian community, which is how Nwakanma learned of Imo's situation. Nwakanma offered to provide a variety of services related to Imo's legal defense, including assistance and consultation in retaining defense counsel and management of Imo's legal defense funds. Imo accepted Nwakanma's offer, retained attorney Dick DeGuerin

4

on Nwakanma's recommendation, and provided Nwakanma over $2 million to hold in trust on his behalf for his legal defense.

### *Imo is tried and convicted*

The case proceeded to trial. The jury found Imo guilty on multiple counts of healthcare fraud, conspiracy to commit healthcare fraud, mail fraud, money laundering, and structuring to avoid reporting requirements. The trial court adopted the jury's findings and sentenced Imo to 327 months' imprisonment and ordered him to pay $30,216,592.15 for restitution and a $4,800 special assessment. *See United States v. Imo*, 739 F.3d 226 (5th Cir. 2014).

### *Imo files a grievance complaint and civil suit against Nwakanma*

After trial, Imo requested an accounting of the funds provided for his defense, which Nwakanma refused to provide. Eventually, Imo filed a Grievance Complaint against Nwakanma with the Kansas State Bar, accusing Nwakanma of misappropriating his legal defense funds and engaging in a variety of related misconduct. Imo also filed a civil suit against Nwakanma in Harris County trial court, asserting claims for breach of contract, conversion, fraud, fraudulent inducement, and violations of the DTPA.

### *Imo and Nwakanma enter into the settlement agreement*

During the pendency of the Harris County Suit and the Kansas Disciplinary Proceeding, Nwakanma contacted Imo's new lawyer, Tola Oresusi, and adult son,

5

Ikeogu Imo, in an attempt to amicably settle the dispute. After a series of negotiations, the parties signed a Settlement and Release Agreement.

The Settlement Agreement begins with three unnumbered paragraphs of recitals. The first paragraph identifies the parties to the settlement as Imo and Nwakanma:

> This Settlement and Release Agreement is made by and between Mr. Imo Umawa Imo {Imo} and Attorney Prince Uchenchi Nwakanma {Attorney}, whom collectively are referred to as Parties.

The second paragraph describes the agreement's scope:

> This Agreement covers all claims and disputes, whether or no such claims are now pending or have not been asserted between the Parties arising from or related to Attorney's representation of Imo in Case No: H-09-426, United States of America v. Umawa O. Imo, which was pending in the United States District Court for the Southern District of Texas and was resolved by a judgment entered on October 21, 2013.

The third paragraph specially defines "Imo" and "Attorney." Specifically, the paragraph defines "Imo" to include not only Imo himself but also "his heirs, representatives, agents, and all individuals or entities who had or have standing to assert a claim on his behalf." And it expressly states that "Imo" includes Imo's "son, Mr. Ikeogu Imo, to whom Imo ha[d] granted a General Power of Attorney" and Imo's "present attorney of record, Attorney Tola Oresusi." The paragraph defines "Attorney" to include not only Nwakanma but also "his heirs, his law firm, [and] any other entity owned by Attorney or in which Attorney ha[d] or m[ight] acquire

6

an interest, and which m[ight] potentially be exposed to liability arising from or related to the subject matter of th[e] Agreement."

After the recitals, the Settlement Agreement sets forth twelve numbered paragraphs. The first five numbered paragraphs consist of four joint stipulations describing the background of the dispute and a denial of liability by Nwakanma. The next seven numbered paragraphs set forth the material terms of the settlement.

Paragraph 6 sets forth the consideration owed by each party and the terms by which the parties will perform. It consists of seven Subparts.

Subparts (a) and (b) set forth the consideration. Under Subpart (a), Nwakanma agrees to pay Imo $425,000 dollars "for the final, full, and complete settlement of all claims within the scope of this Agreement." And under Subpart (b), Imo agrees to (1) "dismiss with prejudice his pending appeal in Texas" and (2) "send a letter to the Kansas State Bar notifying the Bar that he has resolved all claims with Attorney" and will "no longer participate in any related proceeding."

Subparts (c), (d), and (e) then set forth the terms under which the parties must provide the consideration:

> c. The sequence of events related to the implementation of this Settlement Agreement shall be as follows: Attorney shall purchase two bank drafts of $100K each made out in the name of Attorney Tola Oresusi and Mr. Ikeogu Imo as Agent in Fact of Imo; and shall also issue checks payable to the same persons in amounts of not less than $10K for the balance of the $225K. The first check and subsequent checks shall be due and payable on the last day of the month following the date on which the Kansas Disciplinary Action is terminated, or the

7

last day of the month after the State Bar of Kansas acknowledges Imo's intent to dismiss the Kansas Proceedings, whichever occurs first in time.

d. Imo and his agents shall prepare for filing a Motion to Abate in the Court of Appeals and a signed copy of the Kansas Dismissal Letter.

e. All of the bank drafts, payment checks, Motion to Abate and Dismissal Letter shall be delivered to Mr. James Okorafor. Upon confirmation of the filing of the Motion to Abate in the Court of Appeals and mailing of the Dismissal Letter to Kansas, the first $100K draft shall be delivered to Attorney Tola Oresusi. Upon confirmation or receipt of a letter of Termination of the Kansas Proceedings or of Imo's Dismissal Letter of the Kansas Proceedings by the State Bar of Kansas, the second $100K draft and all the payment checks shall be delivered to Attorney Tola Oresusi, who shall then file a Motion to Dismiss with Prejudice in the Court of Appeals, Houston, Texas.

Subpart (f) then imposes an additional duty on Imo to provide a sworn statement to Nwakanma, which only arises if the Kansas Bar declines to dismiss the Grievance Complaint and proceeds with the disciplinary proceeding:

In the event, the State Bar of Kansas proceeds with the Disciplinary Complaint after its receipt and acknowledgment of IMO's Dismissal Letter, IMO and/or his representatives shall give attorney a sworn statement attesting to the fact that Attorney does NOT owe IMO any money in relating to the complaint and that IMO does NOT expect any restitution to be paid to him.

Finally, Subpart (g) imposes an additional duty on Nwakanma "to help Imo and his family recover an over payment of $75K in attorney's fees to Attorney Dick DeGuerin of Houston, Texas, by providing a sworn statement to Imo confirming the amount Attorney Dick DeGuerin promised to charge Imo if he himself tried the case [or] if an associates of his tried the case."

8

The remaining six numbered paragraphs consist of standard settlement provisions. Paragraph 7 is a liquidated damages clause that determines the measure of damages for untimely payments. Paragraph 8 is an indemnification clause under which Imo agrees to indemnify Nwakanma from third-party claims. Paragraph 9 is a standard release. Paragraph 10 consists of a confidentiality clause and a clause entitling the parties to recover any attorney's fees and costs incurred to enforce the agreement. Paragraph 11 is an integration clause. And Paragraph 12 is a choice-of-law and venue clause.

The Settlement Agreement is signed by Oresusi, in his capacity as Attorney for Umawa Imo; Ike Imo, in his capacity as Custodian of General Power of Attorney for Umawa Imo; and Nwakanma.

### *The parties partially perform the Settlement Agreement*

After the parties signed the Settlement Agreement, Nwakanma made the initial scheduled payments, and Imo dismissed the Harris County Suit. *See Imo v. Nwakanma*, No. 01-13-00699-CV, 2014 WL 1338325, at *1 (Tex. App.—Houston [1st Dist.] Apr. 3, 2014, no pet.) (mem. op.) (per curiam). Imo also provided the required notice to the Kansas State Bar. In a letter dated February 19, 2014, Imo's attorney, Oresusi, notified Stanton A. Hazlett, the Disciplinary Administrator assigned to Imo's Grievance Complaint, that Imo and Nwakanma had resolved their dispute and that Imo would not participate in any further proceedings related thereto:

9

Please kindly be hereby informed that I have satisfactorily resolved all matters to or arising from the above referenced complaint against Attorney Uchenchi O. Nwakanma and Prince & Associates. At this time, there no longer exits any dispute or controversy between us which requires your time, attention and resources. The above referenced complaint was brought as a result of miscommunication and misunderstanding which as earlier stated herein has been completely and satisfactorily resolved.

Therefore, please kindly accept this formal notice that is effective as the date of this letter, I have irrevocably withdrawn and terminated the above referenced complaint and also requesting that all proceedings related to or arising from the said complaint as instituted by the Kansas Disciplinary Administration which is now pending, be terminated. I shall no longer participate in any proceeding of any type related to this moot complaint.

I would very much appreciate a response to acknowledge the withdrawal and termination of my above referenced complaint.

In a letter dated February 28, 2014, Hazlett responded to Oresusi's notice, informing Oresusi that he did not intend to dismiss the Grievance Complaint and would move forward with the disciplinary proceeding:

I acknowledge receiving your letter dated February 19, 2014, in which you informed me that Mr. Imo no longer wishes to proceed with his complaint against Mr. Nwakanma. I also received the letter signed by you and Mr. Imo dated February 9, 2014, in which Mr. Imo informed me that he wants to withdraw and terminate his complaint against Mr. Nwakanma and that he will no longer participate in the prosecution of that complaint.

I refer you to [Kansas] Supreme Court Rule 213 Refusal Of Complainant To Proceed. The rule states as follows:

The unwillingness or neglect of the complainant to sign a complaint or prosecute a charge, settlement or compromise between the complainant and the attorney, or

10

> restitution by the attorney, shall not necessarily justify abatement of any complaint.

> Please advise Mr. Imo that I do not intend to dismiss his complaint. I will continue to prosecute this matter, including an investigation regarding the circumstances surrounding Mr. Imo's decision to dismiss his complaint against Mr. Nwakanma.

In a letter dated March 4, 2014, Oresusi reiterated to Hazlett that Imo and Nwakanma had settled their dispute, that the terms of the settlement were confidential, and that Imo had withdrawn his Grievance Complaint. In a letter dated March 12, 2014, Hazlett responded to Oresusi that his position remained unchanged.

After it became clear that the Kansas State Bar would not dismiss Imo's Grievance Complaint, Nwakanma stopped making payments under the Settlement Agreement. Nwakanma then requested that Imo provide him a sworn statement under Paragraph 6(f) attesting that Nwakanma did "not owe Imo any money . . . relating to the complaint" and that Imo did "not expect any restitution to be paid to him." Imo refused to provide the statement.

### Imo sues Nwakanma for breach of the settlement agreement

In November 2017, Umawa Imo and Ike Imo filed their original petition against Nwakanma, asserting a claim for breach of contract and seeking to recover the unpaid balance under the Settlement Agreement as well as penalties, fees, and costs. Nwakanma answered, asserting a general denial and failure of conditions precedent.

11

The case was tried to the bench. The trial court rejected Nwakanma's affirmative defense, found him liable for breach of the Settlement Agreement, and signed a final judgment awarding Imo $160,000 in actual damages, $738,025 in liquidated damages, $45,000 in attorney's fees, $110,995.89 in prejudgment interest, and post-judgment interest at 10 percent.

Nwakanma filed a motion for new trial, which the trial court denied. The trial court then entered written findings of fact and conclusions of law in support of its judgment.

Nwakanma appeals.

**Violation of Public Policy**

In his first issue, Nwakanma argues that the trial court's judgment should be reversed because the Settlement Agreement violates public policy and is therefore unenforceable. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex. 2004) ("As a rule, parties have the right to contract as they see fit *as long as their agreement does not violate the law or public policy*." (emphasis added)). Specifically, Nwakanma contends that the Settlement Agreement violates public policy by requiring Imo to dismiss his Grievance Complaint and notify the Kansas State Bar that he will no longer participate in any related proceeding. These requirements, Nwakanma argues, conflict with the Texas and Kansas Disciplinary Rules of Professional Conduct, which prohibit a lawyer from "engag[ing] in conduct

12

constituting obstruction of justice[,]" TEX. DISCIPLINARY RULES PROF'L CONDUCT R. 8.04(a), or "conduct that is prejudicial to the administration of justice[,]" KAN. DISCIPLINARY RULES PROF'L CONDUCT R. 8.04(d). Imo responds that Nwakanma has failed to preserve the issue for our review. We agree.

To preserve an issue for appellate review, "the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). The complaint must be specific enough to "allow[] the trial judge to make an informed ruling." *Campbell v. State*, 85 S.W.3d 176, 185 (Tex. 2002) (quoting *McDaniel v. Yarbrough*, 898 S.W.2d 251, 252 (Tex. 1995)).

Nwakanma did not assert that the Settlement Agreement violates public policy in his answer or any other pretrial pleading. At trial, Nwakanma did briefly argue, in his opening statement, that the evidence would show the Settlement Agreement "was against public policy." But he didn't explain why the Settlement Agreement violated public policy or how the evidence would make such a showing. The evidence Nwakanma presented at trial bore no obvious relationship to the issue, and Nwakanma didn't bother bringing it up again in his closing argument. In his motion for new trial, Nwakanma argued that the "subject matter and terms of the agreement

13

violate public policy." But he again failed to specify why. At no point in the proceedings below did he ever mention the Texas or Kansas Disciplinary Rules of Professional Conduct, much less assert that the dismissal and notice requirements of the Settlement Agreement conflict with these rules' intended purpose.

We hold that Nwakanma's general statements that the Settlement Agreement violates public policy were insufficiently specific to allow the trial court to make an informed ruling on whether the Settlement Agreement violates public policy by conflicting with the Texas and Kansas Disciplinary Rules of Professional Conduct. *See Fenlon v. Harris Cty.*, 569 S.W.3d 783, 795 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("Fenlon's general statements at the hearing before the tax master that Propel's evidence did not support its claim and that Propel made errors in calculating the balance on the Note were not sufficiently specific to preserve any complaint concerning Propel's evidence."). Thus, Nwakanma failed to preserve his complaint for our review.

We overrule Nwakanma's first issue.

**Sufficiency of Evidence of Breach**

In his second issue, Nwakanma contends there is legally insufficient evidence that he breached the Settlement Agreement. The trial court found that Nwakanma initially performed under the Settlement Agreement by making the first $265,000 of scheduled payments but then breached the Settlement Agreement by failing to pay

14

the remaining $160,000 when it became due and owing. Nwakanma concedes that he paid the initial $265,000 but failed to pay the remaining $160,000. Nwakanma argues that his failure to pay the remaining $160,000 does not constitute a breach of the parties' agreement because he never had a duty to pay this amount. Nwakanma argues that the dismissal of Imo's Grievance Complaint was a condition precedent to his duty to pay the remaining $160,000. It is undisputed the Grievance Complaint was never dismissed. Thus, Nwakanma argues, he never had a duty to pay the remaining amount. To resolve the issue presented, we must construe the Settlement Agreement to determine whether the dismissal of Imo's Grievance Complaint is a condition precedent to Nwakanma's duty to perform.

## A.    Standard of review

The interpretation of an unambiguous contract is a question of law, which we review de novo using well-settled contract-construction principles. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018). In construing a contract, we ascertain the true intentions of the parties as expressed in the writing itself. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). In identifying such intent, we examine and consider the entire writing to harmonize and give effect to all the provisions of the contract so that none are rendered meaningless. *Id.*

**B.      Analysis**

Considering the entire Settlement Agreement to harmonize and give effect to each of its provisions, we hold that the dismissal of Imo's Grievance Complaint is not a condition precedent to Nwakanma's duty to perform.

First, the Settlement Agreement never says the dismissal of the Grievance Complaint is a condition precedent to Nwakanma's duty to perform.[1] The clauses establishing the terms of performance do not condition Nwakanma's duty to pay on the dismissal of the Grievance Complaint. In fact, they require Nwakanma to pay regardless of the Complaint's posture, so long as certain other conditions are met.

Paragraph 6(c) and 6(e) establish when Nwakanma has a duty to perform. Paragraph 6(c) provides, in relevant part, that "[t]he first check and subsequent checks shall be due and payable on the last day of the month following the date on which the Kansas Disciplinary Action is terminated, *or* the last day of the month after the State Bar of Kansas acknowledges IMO's intent to dismiss the Kansas Proceedings, *whichever occurs first in time*." The disjunctive text establishes that

---

[1]      Nwakanma contends that Paragraph 6(f) establishes a condition precedent, which is true, as far as it goes, but irrelevant, since it doesn't establish a condition precedent to Nwakanma's duty to pay; instead, it establishes a condition precedent to Imo's duty to provide Nwakanma a sworn statement: "In the event, the State Bar of Kansas proceeds with the Disciplinary Complaint after its receipt and acknowledgment of IMO's Dismissal Letter, IMO and/or his representatives shall give attorney a sworn statement attesting to the fact that Attorney does NOT owe IMO any money in relating to the complaint and that IMO does NOT expect any restitution to be paid to him."

Nwakanma's duty to perform arises if either of two events occurs. His duty to perform arises if Imo's Grievance Complaint is dismissed. And it arises if the Kansas State Bar acknowledges Imo's intent to dismiss his complaint. Thus, if the Kansas State Bar acknowledges Imo's intent to dismiss his complaint, Nwakanma's duty to perform arises, regardless whether Imo's complaint is actually dismissed.

Paragraph 6(e) provides, in relevant part, that "[u]pon confirmation or receipt of a letter of Termination of the Kansas Proceedings *or* of IMO's Dismissal Letter of the Kansas Proceedings by the State Bar of Kansas, the second $100K draft and ALL the payment checks shall be delivered to Attorney Tola Oresusi." As before, the disjunctive text makes clear that Nwakanma's duty to perform arises if either of one of two events occurs. His duty to perform arises upon confirmation or receipt of a letter of termination of Imo's complaint. And his duty arises upon confirmation or receipt of Imo's dismissal letter. Thus, regardless whether Imo's complaint is actually dismissed, if it's confirmed that the Kansas State Bar received Imo's dismissal letter, Nwakanma has a duty to perform.

It is undisputed that the Kansas State Bar received Imo's dismissal letter and acknowledged Imo's intent to dismiss his complaint. Thus, even though the Kansas State Bar declined Imo's request to dismiss his complaint, Nwakanma still had a duty to perform under the Settlement Agreement.

Because the Settlement Agreement contemplates Nwakanma performing before the dismissal of the Grievance Complaint, the complaint's dismissal is not a condition precedent to Nwakanma's duty to perform.

We overrule Nwakanma's second issue.

## Sufficiency of Evidence of Privity

In his third issue, Nwakanma argues that the trial court's judgment should be reversed in part because there is insufficient evidence that Imo's wife was a party to or third-party beneficiary of the Settlement Agreement.

In his appellant's brief, Nwakanma does not correctly identify the parties; he repeatedly states that Ike Imo was convicted of health care fraud and that Umawa Imo is Ike Imo's wife. That is incorrect. To be clear, Umawa Imo is the man who was convicted of healthcare fraud, and Ike Imo is Umawa Imo's adult son. Umawa Imo's wife was not a party below and is not a party now on appeal. The trial court's judgment does not award damages to Umawa Imo's wife or mention her in any of its findings of fact or conclusions of law.

To the extent Nwakanma's argument may be construed as a complaint regarding the damages awarded to Ike Imo, the argument fails because Ike Imo *is* a party to the Settlement Agreement, which expressly defines "Imo" to include not only Umawa Imo, but also Umawa Imo's "son, Mr. Ikeogu Imo."

We overrule Nwakanma's third issue.

**Enforceability of Liquidated Damages Provision**

In his fourth issue, Nwakanma argues that the trial court erred in awarding Imo liquidated damages because the settlement agreement's liquidated damages provision is a penalty and thus unenforceable. *See Atrium Med. Ctr., LP v. Houston Red C LLC*, 595 S.W.3d 188, 192 (Tex. 2020) ("A damages provision that violates the rule of just compensation, however, and functions as a penalty, is unenforceable."). Imo responds that Nwakanma has failed to preserve his complaint for our review. We agree.

Nwakanma did not plead penalty as an affirmative defense to an award of damages under the liquidated damages provision in the settlement agreement. *See Phillips v. Phillips*, 820 S.W.2d 785, 789 (Tex. 1991) (penalty is affirmative defense that must be pleaded or it is waived); *TEC Olmos, LLC v. ConocoPhillips Co.*, 555 S.W.3d 176, 187 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) ("The party asserting that a liquidated-damages clause is a penalty provision bears the burden of pleading and proof."). Nor did he argue or present evidence showing that the liquidated damages provision is unenforceable at trial. He likewise failed to raise the issue in his motion for new trial. Because Nwakanma wholly failed to raise the issue in the proceedings below, we hold that he has failed to preserve the issue for our review.

We overrule Nwakanma's fourth issue.

## Conclusion

We affirm.

Gordon Goodman
Justice

Panel consists of Justices Goodman, Landau, and Guerra.