**Affirmed and Opinion filed March 13, 2012.**



In The

## 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

_____

### NO. 14-11-00463-CV
_____

### AVELO MORTGAGE, LLC, Appellant

### V.

### INFINITY CAPITAL, LLC, Appellee

**On Appeal from the 165th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-16068A**

## OPINION

Appellant Avelo Mortgage, LLC appeals from a summary judgment granted in favor of appellee Infinity Capital, LLC and the denial of summary judgment in favor of Avelo. The key issues before us are: (1) the validity of the tax lien transfer, and (2) the validity of the tax lien foreclosure sale of property on which Avelo held a preexisting lien. We hold that the tax lien transfer substantially complied with the applicable statutes. We further hold that the tax lien foreclosure sale was voidable by Avelo; however, Avelo

allowed the statutory redemption period to expire; therefore, Infinity's title in the property is now absolute. Accordingly, we affirm the judgment of the trial court.

## BACKGROUND

On August 21, 2006, Ariel Salene purchased a condominium unit in the Memorial Cove Lofts in Houston, Texas. To finance the purchase, Salene executed two separate mortgages with deeds of trust to MILA, Inc., which later transferred the mortgages to Avelo. Salene failed to pay homeowners' association dues and fees, and on February 6, 2007, the Memorial Lofts Homeowners' Association foreclosed on the condominium and sold the property to itself.[1]

On May 15, 2007, the homeowners' association sold the property to PERC, LLC. As the new owner of the property, PERC became liable for past-due ad valorem taxes on the property in the amount of $8,735.46. In order to pay the taxes, PERC entered into an agreement with Renata Russo whereby Russo agreed to pay the past-due ad valorem taxes in exchange for a tax lien on the property. PERC executed three documents: (1) a "Consent to Transfer of Tax Lien Pursuant to Texas Property Tax Code Section 32.06 and Contract for Foreclosure of Tax Lien" (the "Sworn Authorization"); (2) an "Agreement for Ad Valorem Tax Transfer" (the "Russo Agreement"); and (3) a Deed of Trust in favor of Russo (the "Russo Deed"). The Sworn Authorization and the Russo Deed were recorded in the Harris County public records on June 28, 2007. The Russo Agreement was not recorded.

On July 6, 2007, Russo paid the past-due ad valorem taxes on the property. The Harris County Tax Assessor-Collector's office issued a "Certification of Payment of Taxes Paid by Another Person and Transfer of Lien under Section 32.06" (the "Certified Statement"). The Certified Statement was recorded in the Harris County public records on August 6, 2007.

---

[1] The homeowners' association foreclosure sale is not at issue in this appeal.

2

Avelo moved to foreclose on its mortgage lien and, in the course of preparing for the foreclosure, became aware of the tax lien held by Russo. Avelo, through its counsel, sent a letter to Russo requesting a payoff statement so that Avelo could extinguish the tax lien before its own foreclosure sale. Russo provided the payoff statement; however, Avelo made no further efforts to pay off the tax lien prior to its foreclosure. Avelo subsequently foreclosed on its mortgage lien and purchased the condominium at its own foreclosure sale on November 6, 2007.[2]

PERC failed to make several installment payments and pay the transfer costs associated with the Russo Agreement, and Russo moved to foreclose on her tax lien. On January 15, 2008, Russo—through her substitute trustee—sent notice of the pending foreclosure sale to PERC and Avelo. Russo's trustee also posted notice at the Harris County Family Law Center and filed a copy of the notice with the Harris County Clerk. On February 5, 2008, Russo's trustee sold the property to Infinity at a foreclosure sale. The substitute trustee's deed conveying the property to Infinity was recorded on February 18, 2008.

Avelo filed suit on March 16, 2009, to recover the property. Avelo filed a notice of lis pendens on April 1, 2009. Infinity denied Avelo's claims and asserted counter-claims against Avelo. Infinity filed a motion for partial summary judgment with respect to all claims asserted against Infinity. Avelo filed a cross-motion for partial summary judgment. On April 13, 2010, the trial court granted Infinity's motion and denied Avelo's motion. The trial court then severed all remaining claims between Infinity and Avelo. Avelo timely appealed.

---

[2] The Avelo foreclosure sale is not at issue in this appeal.

## ANALYSIS

On appeal, Avelo challenges (1) the validity of the tax lien transfer between PERC and Russo and (2) the validity of Russo's tax lien foreclosure sale. We address each issue in turn.

### I. Standard of Review

We review a trial court's summary judgment de novo. *Mid-Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007); *Seber v. Union Pac. R.R. Co.*, 350 S.W.3d 640, 645 (Tex. App.—Houston [14th Dist.] 2011, no pet.). When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary judgment evidence and determine all questions presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The reviewing court should render the judgment the trial court should have rendered. *Id.*

### II. Validity of Tax Lien Transfer

On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property. Tex. Tax Code § 32.01. A property owner may authorize another person (the "transferee") to pay any delinquent taxes imposed by a taxing unit by filing with the collector for the taxing unit a document sworn by the property owner authorizing transfer of the tax lien and describing the property. Tex. Tax Code § 32.06(a-1). When the transferee pays the delinquent ad valorem taxes and any penalties and interest due, the tax collector issues a receipt and certifies that the taxes have been paid by the transferee and that its tax lien has been transferred to the transferee. *Id.* § 32.06(b). The tax collector "shall attach to the certified statement the collector's seal of office," and the "tax receipt and statement may be combined into one document." *Id.*

4

The tax lien transfer at issue occurred in July 2007 and is governed by the statutes as they existed at that time.[3] Under the relevant version of Section 32.06, two documents were required to be recorded in the county where the property was located in order for the tax lien transfer to be valid: (1) the sworn document authorizing the transfer under Section 32.06(a-1) (here, the Sworn Authorization), and (2) the tax collector's certified statement of payment and transfer described in Section 32.06(b) (here, the Certified Statement).

## A. Section 32.06(a-1)

Avelo contends that there are several deficiencies with the tax lien transfer to Russo that render it void. First, Avelo argues that the transfer did not comply with Section 32.06(a-1) because there is "no evidence that the sworn document was ever filed 'with the collector for the unit.'" The relevant portions of Section 32.06 in effect at the time of the transfer stated that:

> (a-1)  A person may authorize another person to pay the delinquent taxes imposed by a taxing unit on the person's real property by filing with the collector for the unit a sworn document . . . .
>
> . . . .
>
> (b)  If a transferee authorized to pay a property owner's taxes pursuant to Subsection (a-1) pays the taxes and any penalties and interest imposed, the collector shall issue a tax receipt to that transferee.

Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 13, sec. 32.06(a-1), (b), 2005 Tex. Gen. Laws 3720, *amended by* Act of May 25, 2007, 80th Leg., R.S., ch. 1329, § 1, 2007 Tex. Gen. Laws 4484–87.

---

[3] The Legislature amended the tax lien statutes, but the effective date of the amendments was September 1, 2007. *See* Act of May 25, 2007, 80th Leg., R.S., ch. 1329, §§ 1, 4, 5, 2007 Tex. Gen. Laws 4484-88. Section 4 of the Act states that the amendments to Sections 32.06 and 32.065 only apply to tax lien transfers occurring after the effective date of the Act. *Id.* § 4, 2007 Tex. Gen. Laws at 4487; *WMC Mortg. Corp. v. Moss*, No. 01-10-00948-CV, 2011 WL 2089777, at *3 n.1 (Tex. App.—Houston [1st Dist.] May 19, 2011, no pet.) (mem. op.).

It is undisputed that Russo paid the ad valorem taxes. It is also undisputed that the tax assessor-collector issued the Certified Statement showing that the taxes were paid and the tax lien was transferred to Russo. Avelo's argument is simply that there is nothing demonstrating that the Sworn Authorization was ever filed with the tax assessor-collector.

The tax receipt under Subsection (b) is required to be issued only if a transferee authorized under Subsection (a-1) pays the delinquency. *Id.* In the absence of evidence to the contrary, it is presumed that official acts or duties are properly performed and that a public official discharges his duty or performs an act required by law in accordance with the law. *Caruso v. Lucius*, 448 S.W.2d 711, 716 (Tex. Civ. App.—Austin 1969, writ ref'd n.r.e.). Avelo has presented no evidence that the tax assessor-collector acted in any way other than that required by law. Therefore, there is a presumption that Russo was an authorized transferee, as the tax assessor-collector issued a tax receipt to her. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 13, sec. 32.06(b), 2005 Tex. Gen. Laws 3720 (amended 2007). We hold that Russo properly complied with Section 32.06(a-1).

## B.  Section 32.06(b)

Next, Avelo argues that the tax lien transfer did not comply with Section 32.06(b) because the tax collector combined the tax receipt and certification in one document, did not place its certification on the Sworn Authorization and did not attach its seal of office to the Sworn Authorization or have the document notarized, and the Sworn Authorization and the Certified Statement were not filed of record on the same date. *See id.* § 13, sec. 32.06(b), 2005 Tex. Gen. Laws at 3720–21. The tax collector's Certified Statement—which was recorded—contains the statements regarding payment of taxes and the transfer of the tax lien required by the statutes. *See WMC Mortg. Corp. v. Moss*, No. 01-10-00948-CV, 2011 WL 2089777, at *4 (Tex. App.—Houston [1st Dist.] May 19, 2011, no pet.) (mem. op.). Moreover, the Certified Statement is marked with the tax collector's seal of office, as required under Section 32.06(b). *See id.* Section 32.06(b), as it existed prior to the amendments, expressly permitted that "the sworn document, tax

6

receipt and affidavit attesting to the transfer of the tax lien may be combined into one document." *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 13, sec. 32.06(b), 2005 Tex. Gen. Laws 3721 (amended 2007); *see also id.* We hold that where, as here, the tax collector (1) issued the Certified Statement that the taxes were paid and the tax lien was transferred, (2) affixed its seal of office to the Certified Statement, and (3) the Certified Statement was recorded, it is not required that the tax collector's certification and seal appear on the Sworn Authorization or that the Sworn Authorization be notarized.

Avelo also argues that the tax lien transfer was invalid because the Sworn Authorization and the tax collector's Certified Statement were not recorded contemporaneously. This argument also lacks merit. The court in *Moss* was faced with an identical argument and concluded that there is no requirement in Section 32.06(b) that both documents be recorded at the same time, so long as they are both recorded in the proper county records.[4] 2011 WL 2089777, at *4. We agree with the *Moss* court's holding. Here, it is undisputed that both the Sworn Authorization and the Certified Statement were recorded in the county where the property is located. Therefore, the separate recordings of the Certified Statement and the Sworn Authorization do not invalidate the tax lien transfer.

## C. Section 32.065(b)

Next, Avelo argues that there was a failure to comply with Section 32.065(b). The version of Section 32.065 in effect at the time of the tax lien transfer required a contract for the payment of taxes entered into between a transferee and a property owner that is secured by a priority lien on the property to provide for a power of sale and foreclosure in the manner specified in Section 51.002 of the Property Code. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 14, sec. 32.065(b), 2005 Tex. Gen. Laws 3722 (amended 2007). The contract also was required to address six other elements: (1) an event of default; (2)

---

[4] The court in *Moss* also considered the version of Section 32.06 as it existed prior to the 2007 amendments. 2011 WL 2089777, at *3.

7

notice of acceleration; (3) recording of the contract (here, the Russo Agreement); (4) recording of the sworn document and affidavit attesting to the transfer of the tax lien (here, the Sworn Authorization and Certified Statement); (5) requiring the transferee to serve foreclosure notices on the property owner at his last known address pursuant to section 51.002 of the Property Code; and (6) requiring the transferee to serve notices, which contain a specific paragraph worded substantially similar to that in the statute, on the mortgage servicer or any lien-holders. *Id.* § 14, sec. 32.065(b)(1)-(6), 2005 Tex. Gen. Laws at 3722.

Avelo argues that the Russo Deed was the alleged "contract for the payment of taxes" and that it did not contain all the required provisions and did not provide for the recording of the contract for the payment of taxes and the Sworn Authorization. *See id.* § 14, sec. 32.065(b)(3)–(b)(4), 2005 Tex. Gen. Laws at 3722. Infinity counters that "reading [together] the [Russo Deed] and all the documents forming the basis of the transfer tax lien" satisfies all of the requirements of Section 32.065(b).

We hold that the Russo Agreement constitutes the agreement for the payment of taxes in this matter. We agree with Avelo that the Russo Agreement, even if read together with the Russo Deed and the Sworn Authorization, did not explicitly comply with the requirements of 32.065(b). Under Section 32.065(b)(3), the Russo Agreement was to contain a provision that it be recorded.[5] Under Section 32.065(b)(6), the foreclosure notice was required to contain a 14-point boldfaced or uppercase statement reading substantially as follows:

> Pursuant to Texas Tax Code section 32.06, the foreclosure sale referred to in this document is a superior transfer tax lien subject to right of redemption under certain conditions. The foreclosure is scheduled to occur on the (DATE)."

---

[5] We note that this requirement was deleted in the 2007 amendments and a new requirement to record the deed of trust or other instrument securing the contract was added.

*Id.* § 14, sec. 32.065(b)(6), 2005 Tex. Gen. Laws at 3722. The notice given by Russo's substitute trustee did not contain this language. Instead, the notice stated that the foreclosure sale was "Pursuant to the authority conferred upon me by that certain [Russo Deed]. . ." and provided that the foreclosure sale would be held on February 5, 2008. The statement was not boldfaced or uppercase. The Russo Deed required the trustee to give notice "as required by the Texas Property Code as then amended" and stated that "this lien shall remain superior . . . ." These statements likewise were not boldfaced or uppercase.

The purposes of notice are: (1) to give those parties entitled to notice an opportunity to protect their interests and (2) to prevent surprise. *Wesco Distribution, Inc. v. Westport Grp., Inc.*, 150 S.W.3d 553, 559 (Tex. App.—Austin 2004, no pet.). Substantial compliance is adequate for notice provisions other than deadlines. *United Fire & Cas. Co. v. Boring & Tunneling Co. of Am.*, 321 S.W.3d 24, 28 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). Here, correspondence sent by Avelo's attorneys to Russo dated October 8, 2007, demonstrates that Avelo was aware of both the Sworn Authorization, which they refer to as a Transfer Tax Lien, and the Russo Deed. It is undisputed that Avelo received actual notice of the impending foreclosure sale. Moreover, Avelo has not alleged surprise.[6] Because the purpose of the statute here was to ensure that all interested parties were aware of the foreclosure sale and aware of their statutory rights and the priority of the tax lien, and as it is undisputed that Avelo was aware of the foreclosure sale and its redemption rights,[7] we hold that the notice sent by Russo's substitute trustee to

---

[6] The letter from Avelo states, "In the course of our foreclosure, we have identified a Transfer Tax Lien held by you, said lien being recorded . . . . Our client has instructed us to obtain payoff information on your Transfer Tax Lien . . . . If you will please have the payoff statement faxed to my attention . . . we will make arrangements to have your lien satisfied in full." Avelo accordingly had knowledge of the senior priority of the tax lien, was aware of the steps required to extinguish the lien, and therefore there was no surprise.

[7] In another letter from Avelo's attorneys to Russo's substitute trustee dated October 31, 2008, the law firm notes that they represent Avelo, as Avelo was "the owner of [the property] at the time of the foreclosure sale which transferred title to the subject property to [Infinity]." The letter also notes that the firm was "retained to assist [Avelo] in the redemption process for the property [Infinity] purchased from you at the February 5, 2008 foreclosure sale . . . ."

9

Avelo substantially complied with the statute. *See Redland Ins. Co. v. Sw. Stainless, L.P.*, 181 S.W.3d 509, 512-13 (Tex. App.—Fort Worth 2005, no pet.) (holding that because surety received actual notice, need of subcontractor to comport with statutory requirement that notice be sent certified mail was negated); *Richardson v. Mid-Cities Drywall, Inc.*, 968 S.W.2d 512, 515 (Tex. App.—Texarkana 1998, no pet.) (upon determining that there was no allegation of a lack of notice created by an omission, and therefore no one had been misled to his prejudice, the court held that the claimant had substantially complied with the statute); *Mustang Tractor & Equip. Co. v. Hartford Accident and Indem. Co.*, 263 S.W.3d 437, 444 (Tex. App.—Austin 2008, pet. denied) (where parties did not dispute that the notices were timely received, lien affidavits that omitted the date and method by which notice was sent to the property owner—which were both required by statute—substantially complied with requirements for a valid lien affidavit, and the omission was merely a technical defect that did not prejudice the property owner).

We further conclude that Avelo's arguments about the lack of contractual provisions dealing with the recording of the contract for the payment of taxes and the Sworn Authorization raise only minor defects not affecting the validity of the transfer. Although Section 32.065(b) requires that the contract contain certain provisions, the statute does not specifically state that the tax lien transfer or the foreclosure sale will be ineffective should the contract omit a required term. *See Moss*, 2011 WL 2089777, at *6. As mentioned previously, the statute in effect at the time required only that the Sworn Authorization and the Certified Statement be filed in order for the transfer of the lien to be effective. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 13, sec. 32.06(d), 2005 Tex. Gen. Laws 3721 (amended 2007). We hold that where, as here, the actions required by Sections 32.06 and 32.065(b) have been performed and the only alleged defects are that the contract between the parties did not contain provisions expressly requiring those actions and the Russo Agreement was not recorded, those defects may render the foreclosure sale voidable, but do not, by themselves, render the foreclosure sale void. *See id.*

10

We hold that Russo complied with the requirements of Section 32.06(a-1), that the requirements of Section 32.06(b) were substantially met when Russo recorded both the Sworn Authorization and the Certified Statement, and that any defects in the contract with regard to Section 32.065(b) merely rendered the foreclosure sale voidable. As discussed below, because the statutory redemption period now has passed, the tax lien transfer is no longer voidable and Infinity's title in the property is absolute. Accordingly, we conclude that the tax lien transfer substantially complied with the requirements of Sections 32.06 and 32.065, and therefore the tax lien transfer was effective to transfer the lien to Russo.

## III. Validity of Tax Lien Foreclosure Sale

Avelo also challenges the validity of the tax lien foreclosure sale, arguing alternatively that (1) the Russo Deed was void for the reasons argued above, with the result being that the foreclosure sale was void as a matter of law, or (2) the foreclosure sale was not conducted in accordance with the tax lien transfer statutes—specifically, that non-judicial foreclosure was not available because there was no contract that required foreclosure proceedings to comply with Sections 32.06 and 32.065 of the Texas Tax Code. Because we already have determined that the Russo Deed was not void, we only consider the second argument.

> The amendments to the tax lien transfer statutes provided that:
>
> The change in law made by this Act . . . applies to all foreclosures . . . that occur on or after [September 1, 2007], *other than a foreclosure under a . . . lien that was transferred before* [September 1, 2007] *pursuant to a contract that provided for specific foreclosure procedures under the law in effect at the time the contract was executed.* [Such] a foreclosure . . . is governed by the law in effect at the time the contract was executed, and the former law is continued in effect for that purpose.

Act of May 25, 2007, 80th Leg., R.S., ch. 1329, § 4(b), 2007 Tex. Gen. Laws at 4487 (emphasis added). Here, the foreclosure took place after September 1, 2007, but the tax lien was transferred before September 1, 2007. Sections 32.06 and 32.065 do not define "contract," other than as a "contract for the payment of taxes" that is "secured by a lien on

the property." Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 13, sec. 32.06(c)(2), 2005 Tex. Gen. Laws 3721 (amended 2007); *id.* § 14, sec. 32.065(a), (b), 2005 Tex. Gen. Laws at 3722. Infinity argues that the Sworn Authorization and the Russo Deed should be read together to form the contract. We held above, however, that the Russo Agreement constitutes the contract for the payment of taxes in this matter. The Russo Agreement states that it is secured pursuant to Sections 32.06 and 32.065 of the Tax Code[8] and is additionally secured by the Russo Deed. The Russo Deed provides for an event of default, allows acceleration, and provides that notice of the foreclosure sale shall be given "as provided by the Texas Property Code as then amended." We conclude that these documents may be read together. We further conclude that, when read together, the contract "provided for specific foreclosure procedures under the law in effect at the time the contract was executed." *See* Act of May 25, 2007, 80th Leg., R.S., ch. 1329, § 4(b), 2007 Tex. Gen. Laws 4484, 4487. Therefore, the prior law applies.

Under former Section 32.06, Subsections (c) and (i), the transferee of a tax lien was allowed to conduct a foreclosure without a court order if notice was served to the property owner and all lien-holders, and either (1) the foreclosure occurred at least one year after the lien was recorded, or (2) "the contract between the owner of the property and the transferee provide[d] otherwise." *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 13, sec. 32.06(c), (i), 2005 Tex. Gen. Laws 3721 (amended 2007); *Moss*, 2011 WL 2089777, at *5. Here, it is undisputed that notice was served on PERC and Avelo. The foreclosure occurred less than a year after the lien was recorded—the lien was recorded on August 6, 2007, and the foreclosure sale occurred on February 5, 2008—but the contract between Russo and PERC provided that "[the] [t]ransferor hereby waives the one-year restriction of foreclosure of the tax lien as set forth in section 32.06(i and j) of the Texas Property Tax

---

[8] The Russo Agreement does not reference Section 32.065 by number; however, it references its caption, "Contract for Foreclos[ure] of Tax Lien."

Code."[9] We hold that Russo was allowed to conduct a foreclosure sale without a court order.

We agree with the *Moss* court, and we once again conclude that where, as here, there is substantial compliance with Sections 32.06 and 32.065, any defect in the contract regarding those sections renders the foreclosure sale merely voidable, but does not, by itself, render it void. *See id.* at *4–5. Even if the requirements of Section 32.065(b) were not specifically spelled out in one of the recorded documents, it is undisputed that the Sworn Affidavit, Certified Statement, and Russo Deed were in fact recorded, that notice of the foreclosure was given to Avelo, and that Avelo was aware of the tax lien transfer, the foreclosure sale, and the redemption period.

Subsection 32.06(k), as it then existed, provided a statutory right of redemption for lien-holders whose interests have been foreclosed by a tax lien. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 13, sec. 32.06(k), 2005 Tex. Gen. Laws 3722 (amended 2007). A purchaser at a tax sale, such as Infinity, buys with full knowledge that his title may be defeated by redemption. *ABN AMRO Mortg. Grp. v. TCB Farm and Ranch Land Invs.*, 200 S.W.3d 774, 780 (Tex. App.—Fort Worth 2006, no pet.). The redemption provision of Section 32.06 mitigates the harsh effect of a transferred tax lien foreclosure by allowing the property owner or mortgage servicer of a prior recorded lien a specified period of time to redeem the property from the purchaser after sale upon foreclosure of the transferred tax lien. *Id.*

Avelo's interest in the property was not extinguished by the tax lien foreclosure sale; rather, the interest then became subject to the right of redemption. *See ABN*, 200 S.W.3d at 781. Therefore, the foreclosure sale was voidable at Avelo's insistence had it exercised its right of redemption during the statutory redemption period. Here, because it

---

[9] The Sworn Authorization also provides that, "[t]he right to foreclose the transferred tax lien (s) [sic] shall exist immediately in the Transferee and may be exercised by Transferee at any time there is a default . . . ."

is undisputed that the property involved was not a homestead, the statutory right of redemption was exercisable during a period lasting 180 days from the date on which the purchaser's deed was recorded. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 1126, § 13, sec. 32.06(k), 2005 Tex. Gen. Laws 3722 (amended 2007). As Infinity's deed was recorded on February 18, 2008, Avelo's statutory redemption period expired on approximately August 16, 2008. We hold that Avelo did not timely exercise its rights during the redemption period, and therefore any defect in the contract for the payment of taxes has been waived. Accordingly, Infinity's title in the property is now absolute.

## CONCLUSION

We overrule Avelo's first issue. We do not reach Avelo's second issue—that the trial court should have granted its cross-motion for partial summary judgment against Infinity—because we have concluded that the trial court properly granted summary judgment in favor of Infinity. Accordingly, we affirm the judgment of the trial court.


/s/      Martha Hill Jamison
         Justice

Panel consists of Chief Justice Hedges and Justices Jamison and McCally.

14