# NO. 12-20-00011-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *OVATION SERVICES, LLC, APPELLANT* | § | *APPEAL FROM THE 7TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *EDRES JOSEPH RICHARD, JR., APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *OPINION*

Ovation Services, LLC appeals the trial court's order granting summary judgment in favor of Edres Joseph Richard, Jr. Ovation raises eight issues on appeal. We affirm.

### BACKGROUND

Ovation is the authorized mortgage servicer for FGMS Holdings, LLC. FGMS Holdings is a licensed tax transfer lender by the Office of the Consumer Credit Commissioner of the State of Texas. Tax transfer lenders facilitate loans to property owners to pay off due or delinquent property taxes when the property owner cannot pay.

Ovation filed this suit to judicially foreclose on a transferred tax lien held by FGMS Holdings that it acquired through a series of assignments and transfers from other tax transfer lenders. The subject property is a 1.589 acres tract in the M Estrada Survey No. 7, Smith County, Texas. The property was formerly owned by Terry Jack York and Donna York. Richard acquired the property by reason of a sheriff's deed resulting from a prior separate tax collection lawsuit filed on November 5, 2013, as Cause No. 24,465-B, Winona ISD v. Terry Jack York, Donna York and MLS, LLC dba My Loan Servicer, in the 114th Judicial District Court, Smith County, Texas.

1

A history of the transferred tax lien and prior tax collection lawsuit reveals that the Yorks, delinquent in payment of property taxes from 2004 to 2006 and 2008 to the Smith County taxing units, obtained a loan from Community Tax Relief LP and executed a promissory note evidencing the transaction on April 2, 2009.  The note was secured by a tax lien deed of trust, also executed on April 2 and filed in the Smith County Official Public Records on May 4.  As part of this transaction, the Yorks executed a sworn document required by the Texas Tax Code authorizing Community Tax Relief to pay the delinquent taxes.  This document also authorized the Smith County Tax Assessor Collector to transfer the tax lien on the property to Community Tax Relief.  After the taxes were paid with the promissory note proceeds, the Smith County Tax Assessor Collector issued an affidavit certifying that the tax lien on the property had been transferred to Community Tax Relief.[1]

On March 16, 2011, Community Tax Relief assigned the note, deed of trust, and transferred the tax lien to MLS, LLC d/b/a My Loan Servicer (MLS).  The assignment was executed on May 19 and recorded in the official records on July 8.

Due to continued delinquencies on newly accrued annual property taxes, on November 5, 2013, Winona Independent School District filed a tax collection lawsuit (Cause No. 24,465-B) against the Yorks.  MLS was served with citation issued on February 2, 2015. MLS did not appear or answer in the suit.  Other Smith County taxing units intervened and joined the lawsuit.

The next events with regard to the tax transfer lien occurred outside the direct chain of title.  By instrument dated October 20, 2015, and signed and notarized on October 21, FGMS Holdings, LLC executed a "Collateral Assignment of Tax Liens and Related Liens" to Capital One, National Association.  An exhibit attached to the document described tax liens that were attempted to be collaterally assigned, including the Yorks' tax lien.  The exhibit identified Terry York as the primary borrower, along with the correct address, legal description of the property, and tax transfer lien amount.  However, the description identified an incorrect deed of trust date of April 1, 2012, whereas the correct date was April 2, 2009.  This document was filed in the Smith County Official Records on October 22, 2015, without linking its acquisition of the tax transfer lien from MLS.  In other words, at that point in time, no document existed evidencing how FGMS Holdings acquired its interest from MLS.

---

[1] These documents were filed in the Smith County Official Records.

2

Next, by instrument entitled "Transfer of Lien," FGMS V, LP, transferred the tax collection lien to FGMS Holdings, LLC. The document contains an empty blank next to the word "Date." However, it was signed and notarized on December 17, 2015, and filed in the Smith County Official Records on December 21, 2015.[2] This instrument continues the defective description of the Yorks' tax collection lien as was attached to the Collateral Assignment of Tax Liens and Related Liens to Capital One.

The trial court in Cause No. 24,465-B found that the Yorks and MLS were "duly served with process as required by law, but wholly failed to appear or answer, and wholly made default." Accordingly, the trial court signed a judgment on August 19, 2017 that related back to July 14, 2017. Among other things, the judgment awarded the taxing units a money judgment in the amount of the delinquent taxes, foreclosure of their liens, and authorized a sheriff's tax sale to satisfy the judgment. Richard purchased the property at a sheriff's sale in April 2018.

On June 28, 2018, Ovation filed this suit, collaterally attacking Cause No. 24,465-B. Ovation's primary contention is that, as a tax lien transferee, it was entitled to notice of the suit in Cause No. 24,465-B, it was deprived of notice, and that in such circumstances, it can disregard the judgment in that cause, collaterally attack the judgment, and foreclose the lien it services on behalf of FGMS Holdings, LLC.

Finally, for the first time by instrument dated and signed May 1, 2019, MLS executed a "Transfer of Lien" to FGMS Fund V, LP. However, the document recites that it is to be "effective as of March 23, 2012." This document is unrecorded in the Smith County Official Records. The apparent purpose of this document is to retroactively establish a link in the chain of title from MLS to FGMS V, LP, and subsequently to FGMS Holdings, LLC and Ovation, even though this document did not exist until after the court disposed of the underlying suit, Richard acquired the property at the sheriff's sale, and Ovation filed this suit.

Richard filed a motion for summary judgment, alleging that the lien was extinguished in Cause No. 24,465-B, which the trial court granted. This appeal followed.

---

[2] We note that the "Transfer of Lien" from FGMS V to FGMS Holdings was signed and notarized after FGMS Holdings executed the Collateral Assignment of Tax Liens and Related Liens to Capital One. This transfer may have occurred earlier than the signature and notary date because the transaction was undated.

## SCOPE OF SUMMARY JUDGMENT ISSUES CONSIDERED ON APPEAL

In its first issue, Ovation contends that the trial court improperly granted summary judgment on the affirmative defense of res judicata because Ovation did not move for summary judgment on this ground.

All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX. R. CIV. P. 166a(c). A motion for summary judgment must itself expressly present the grounds upon which it is made, and must stand or fall on these grounds alone. *See id.*; *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997). A court cannot grant summary judgment on grounds that were not presented. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002).

The trial court found in its order granting summary judgment that "there is no genuine issue of material fact as to [Richard's] affirmative defense of res judicata and that [Ovation's] lien was extinguished upon the entry of the Judgment in Cause No.: 24,465-B. . . ." Richard pleaded the affirmative defense of res judicata but did not expressly move for summary judgment on that ground.

Although the trial court expressly granted summary judgment on the unpresented res judicata ground, it also found in its order that Ovation's "lien was extinguished upon the entry of the Judgment in Cause No. 24,465-B. . . ." In his summary judgment motion, Richard recited the history of the tax transfer liens in detail and argued that MLS was the record holder and owner of the lien at the time the tax collection suit was filed, and that at the tax sale, all liens were extinguished by law in the judgment in Cause No. 24,465-B. Richard cited statutory authority in the Tax Code and caselaw establishing that the lien was extinguished as a matter of law.

Ovation's first issue is sustained insofar as the trial court improperly granted summary judgment on Richard's affirmative defense of res judicata. *See* TEX. R. CIV. P. 166a(c); *Johnson*, 73 S.W.3d at 204; *Science Spectrum, Inc.*, 941 S.W.2d at 912. However, as we discuss below, there are other proper grounds to affirm summary judgment. These grounds are supported by the theories asserted in Richard's motion and the ensuing order granting summary judgment when the trial court found that "[Ovation's] lien was extinguished upon the entry of the Judgment in Cause No.: 24,465-B."

Relatedly, Ovation argues in its second issue that Richard failed to prove the "identity of the parties" element to his res judicata defense. Because we held that we cannot affirm the trial

4

court's judgment on res judicata grounds, we need not address this issue.  *See* TEX. R. APP. P. 47.1.

## TEXAS TAX CODE – TRANSFERRED TAX LIENS

In Ovation's fourth issue, it contends that Texas Tax Code Section 33.445, which addresses joinder and the rights of tax lien transferees in subsequent tax collection lawsuits by governmental taxing units, did not extinguish its transferred tax lien.  In Ovation's third issue, it contends that the trial court failed to expressly state that the transferred tax lien serviced by Ovation was extinguished as required by Texas Tax Code Section 33.445(d).  Because these issues are related, we address them together.

### Standard of Review

The movant for traditional summary judgment bears the burden of showing the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law.  TEX. R. CIV. P. 166a(c).  When the movant seeks summary judgment on a claim in which the nonmovant bears the burden of proof, the movant must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense.  *See Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995).  Once the movant establishes a right to summary judgment, the burden shifts to the nonmovant to respond to the motion and present the trial court with any issues that would preclude summary judgment.  *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979).  We review the record de novo and in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.  *See Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006).

### Applicable Law

On January 1 of each year, a tax lien attaches to real property to secure the payment of all taxes, penalties, and interest ultimately imposed for the tax year on the property.  TEX. TAX CODE ANN. § 32.01(a) (West 2015); *Avelo Mortg., LLC v. Infinity Capital, LLC*, 366 S.W.3d 258, 261–62 (Tex. App.—Houston [14th Dist.] 2012, no pet.).  At any time after a property tax becomes delinquent, a taxing unit may file suit to foreclose the lien securing payment of the tax, to enforce personal liability for the tax, or both.  TEX. TAX CODE ANN. § 33.41(a) (West 2015).

A property owner may authorize a "transferee" to pay the taxes imposed on real property by filing with the collector for the taxing unit a sworn document authorizing payment of the taxes and describing the property. *See id.* § 32.06(a-1) (West 2015); *Avelo Mortg.*, 366 S.W.3d at 262. A tax lien may be transferred from the taxing unit to the transferee on behalf of the property owner. TEX. TAX CODE ANN. § 32.06(a-2)(1); *1901 NW 28th Street Tr. v. Lillian Wilson, LLC*, 535 S.W.3d 96, 100 (Tex. App.—Fort Worth 2017, no pet.).

If a transferee pays the taxes and any penalties and interest imposed, the collector for the taxing unit must issue a tax receipt to the transferee and certify that the taxes have been paid by the transferee and that the taxing unit's tax lien is transferred to the transferee. TEX. TAX CODE ANN. § 32.06(b); *Avelo Mortg.*, 366 S.W.3d at 262; *see also Genesis Tax Loan Servs., Inc. v. Kothmann*, 339 S.W.3d 104, 110 (Tex. 2011) ("The statutory transfer process involves an authorization by the property owner and a certification by the tax collector."). The transferee shall record the transferred tax lien and the certification in the deed records of the county where the property is located. TEX. TAX CODE ANN. § 32.06(d). The transferee may foreclose on the tax lien. *Id.* § 32.06(c); *see also id.* § 32.065(c) (West 2015) ("Notwithstanding any other provision of this code, a transferee of a tax lien . . . is subrogated to and is entitled to exercise any right or remedy possessed by the transferring taxing unit, including or related to foreclosure or judicial sale. . . ."); *ABN AMRO Mortg. Grp. v. TCB Farm & Ranch Land Invs.*, 200 S.W.3d 774, 777 (Tex. App.—Fort Worth 2006, no pet.).

After the transfer, the transferee is subrogated to all rights and remedies of the transferring taxing unit. *See Fenlon v. Harris County*, 569 S.W.3d 783, 792-94 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (describing tax transfer lien law, including subrogated status of transferee, and holding that lienholder had valid transferred tax lien); *see also 1901 NW 28th St. Tr.*, 535 S.W.3d at 100 (citing *Billings v. Propel Fin. Servs., L.L.C.*, 821 F.3d 608, 610 (5th Cir. 2016)).

In a suit to foreclose a delinquent tax lien by the applicable taxing unit, the taxing unit "shall also join each transferee of a tax lien against the property that may appear of record under Section 32.06." TEX. TAX CODE ANN. § 33.445(a) (West 2015). "Transferee" includes not only the original transferee, but any licensed "successor in interest to a tax lien that is transferred under this section." *Id.* § 32.06(a)(2)(B).

After the transferee joins the suit, the transferee "may file its claim and seek foreclosure in the suit for all amounts owed the transferee that are secured by the transferred tax lien, regardless of when the original transfer of tax lien was recorded or whether the original loan secured by the transferred tax lien is delinquent." *Id*. § 33.445(a). Alternatively, "the transferee may pay all taxes, penalties, interest, court costs, and attorney's fees owing to the taxing unit that filed the foreclosure suit and each other taxing unit that is joined." *Id.*

If the transferee exercises the latter option, in consideration of its payment of those taxes and charges, the taxing unit shall transfer its tax lien to the transferee and enter its disclaimer in the suit, which does not require authorization by the property owner. *See id.* § 33.445(b). Upon transfer of all applicable tax liens, the transferee may seek to foreclose the tax liens in the pending suit or in any other manner provided by Section 32.06, regardless of when the original transfer of tax lien was recorded or whether the original loan secured by the transferred tax lien is delinquent. *Id.* § 33.445(c). The foreclosure may include all amounts owed to the transferee, not only from the transfer it acquired from the taxing unit as part of the tax collection lawsuit, but also any amount secured by the original transferred tax lien it obtained from the property owner. *Id.* Finally, all liens held by a transferee who is joined under Section 33.445 but failed to act in the manner provided therein are extinguished, and the court's judgment shall reflect the extinguishment of those liens. *Id.* § 33.445(d).

**Discussion**

At the outset, we note Ovation admitted in its discovery responses that MLS was a party in Cause No. 24,465-B, MLS was properly served citation in that lawsuit, and that the lien held by Ovation as servicer for FGMS Holdings is derived from MLS. In other words, the MLS lien and the lien serviced by Ovation are one and the same, and any rights Ovation has as a servicer for a transferee are derivative of MLS's rights. It is also undisputed that MLS failed to appear or answer in the prior suit. Ovation argues that FGMS V and FGMS Holdings were entitled to be joined as parties under Section 33.445, and because they were not, Section 33.445 does not affect its ability to enforce the underlying lien assigned to it by MLS.

After filing suit, the taxing units joined MLS as the "transferee of a tax lien against the property that may appear of record under Section 32.06." *See id.* § 33.445(a). This is because, at the time the taxing units filed Cause No. 24,465-B, MLS was the transferee that had a recorded transferred tax lien in the chain of title that it acquired from Community Tax Relief, which was

the original transferee. Section 32.06 also defines "transferee" to include "a successor in interest to a tax lien that is transferred under this section." *See id.* § 32.06(a)(2)(B). That section requires a transferee, which would necessarily include a successor in interest to a transferred tax lien, to record the transferred tax lien in the county in which the property encumbered by the lien is located. *See id.* § 32.06(d).

The May 1, 2019, Transfer of Lien establishing a link in the chain of title from MLS to FGMS V was backdated to March 23, 2012. This document did not exist until after Ovation filed this collateral attack lawsuit, which was also after the prior suit had been disposed of and the property had been sold to Richard at the sheriff's sale. That "Transfer of Lien" document has never been recorded in the Smith County Official Records. As we discuss later in this opinion, the taxing units never received actual or constructive notice of this transaction, including inquiry notice to investigate beyond its chain of title, of any other potential transferees. Therefore, without any recorded transferred tax lien as a successor in interest within the chain of title from MLS, Ovation has not shown that it was a "transferee" that "appears of record under Section 32.06." Consequently, neither Ovation, nor FGMS V or FGMS Holdings, were required to be joined in the suit by Section 33.445. *See id.* § 33.445.

Ovation next argues in its third issue that the trial court did not comply with the Section 33.445(d) requirement to state in the judgment that the underlying transferred tax lien was extinguished. That section provides that "[a]ll liens held by a transferee who is joined under this section but fails to act in the manner provided by this section are extinguished, and the court's judgment shall reflect the extinguishment of those liens." *Id*. § 33.445(d). Here, MLS was the only record lien holder at the time suit was filed. It was joined as part of the underlying tax collection lawsuit in Cause No. 24,465-B, but failed to appear or file an answer. It failed to exercise its remedies in the manner provided by Section 33.445. More specifically, MLS failed to exercise its right to seek foreclosure for all amounts owed to it secured by its transferred tax lien. *See id.* § 33.445(a). Furthermore, MLS failed to pay to the taxing units the Yorks' subsequent delinquent taxes, penalties, and other costs giving rise to Cause No. 24,465-B, thereby receiving another transferred tax lien from the taxing units authorizing it to foreclose all amounts owed to MLS, including the original transferred lien and the subsequent lien it acquired from the taxing units in the tax collection suit. *See id.* § 33.445(a)–(c).

8

It is true that the judgment in Cause No. 24,465-B does not expressly include the word "extinguish" when referring to any prior liens such as MLS's transferred tax lien. However, the judgment in Cause No. 24,465-B notes that MLS is a defendant. The judgment addresses the status of "all claims, right, title, interest, or liens asserted by any Defendant(s), and that Plaintiffs [i.e. the taxing units] have foreclosure of their liens on each of the lots, tracts, or parcels of land as against the Defendant(s) [i.e. MLS] or any person claiming under the Defendant(s) by any right acquired during the pendency of this suit [i.e. FGMS Fund V, FGMS Holdings, and Ovation]. . . ." The legal effect of foreclosure by the taxing units in this judgment is to extinguish the transferred tax liens as provided by Section 33.445. *See Conseco Fin. Servicing Corp. v. J & J Mobile Homes, Inc.*, 120 S.W.3d 878, 883 (Tex. App.—Fort Worth 2003, pet. denied) (discussing authorities and general rules that foreclosure causes legal and equitable title in property to merge, extinguishes unsatisfied junior liens, and tax sale purchaser takes property free of lienholders' prior interests). Accordingly, MLS's lien was extinguished.

Furthermore, the lien serviced by Ovation on FGMS Holding's behalf is the same lien assigned to it by MLS, which was extinguished by the trial court's judgment in Cause No. 24,465-B. The 2015 Transfer of Lien document from FGMS Fund V to FGMS Holdings, along with 2015 FMGS Holdings' Collateral Assignment of Tax Liens to Capital One, constitute "claims, right, title, interest, or liens asserted by . . . any person claiming under the Defendant(s) by any right acquired during the pendency of this suit" as that phrase is used in the judgment. Additionally, the Transfer of Lien document establishing this transfer from MLS to FGMS Fund V did not exist until long after the court issued its judgment in Cause No. 24,465-B and the ensuing sheriff's sale to Richard. Therefore, the trial court's judgment did not violate this section. That is, the judgment extinguished "all liens held by a transferee who is joined under this section but fail[ed] to act in the manner provided by this section. . . ." TEX. TAX CODE § 33.445(d). Accordingly, MLS's lien was extinguished, along with any derivative rights to enforce this lien subsequently acquired by FGMS Holdings and Ovation.

In summary, the taxing authorities and the trial court complied with the statute, which functioned as it should under these facts. The taxing units joined the record lienholder, MLS, in the suit. The statute authorized potential remedies to MLS as the lienholder to either foreclose its lien or pay the taxes, penalties, and other fees giving rise to the suit to maintain its lien. MLS

failed to exercise those remedies, and the trial court extinguished the lien in its judgment in Cause No. 24,465-B.

Ovation's third and fourth issues are overruled.

**DUE PROCESS**

In Ovation's fifth through eighth issues, it argues that, independently of the Texas Tax Code, the Smith County taxing units had constructive notice of FGMS's transferred tax lien prior to the trial court's July 17, 2017 judgment, they failed to join FGMS as a party to the underlying tax suit, and that accordingly, it was not bound by the underlying judgment and had due process rights to collaterally attack the judgment in this suit. Because these issues are related, we address them together.

**Applicable Law**

Texas Rule of Civil Procedure 39 requires service and joinder of persons whose interests would be affected by a judgment. TEX. R. CIV. P. 39(a). The rule requires joinder of a person as a party in a legal action if the person claims an interest relating to the subject matter of the action, and "is so situated that the disposition of the action in his absence may . . . as a practical matter impair or impede his ability to protect that interest. . . ." *Id.*

Generally speaking, a lienholder possesses a legally protected interest in property subject to due process rights, such as notice of a tax sale. *See, e.g., Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798, 103 S. Ct. 2706, 2711, 77 L. Ed. 2d 180 (1983). Similarly, apart from the requirements of the statutory scheme in the Tax Code and Property Code, due process concerns dictate that a record lienholder possesses a significant interest in the property subject to foreclosure and should be joined in a tax lien collection suit. *See Sec. State Bank & Tr. v. Bexar County*, 397 S.W.3d 715, 722 (Tex. App.—San Antonio 2012, pet. denied) (op. on reh'g). Moreover, even if the lienholder's interest is evidenced by an unrecorded document, the lienholder should be joined as a party to the tax foreclosure suit if the taxing authority has actual or constructive notice of his interest. *See Coakley v. Reising*, 436 S.W.2d 315, 318 (Tex. 1968). However, an unrecorded conveyance is generally void as to a subsequent bona fide purchaser who purchases the property for valuable consideration and without actual or constructive notice of the competing interest. TEX. PROP. CODE ANN. § 13.001(a) (West 2014); *Noble Mortg. & Invs., LLC v. D & M Invs., LLC*, 340 S.W.3d 65, 76 (Tex. App.—Houston [1st Dist.] 2011, no

10

pet.) (stating that notice sufficient to defeat bona fide purchaser status may be actual or constructive).

Actual notice rests on personal information or knowledge. *Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex. 2001); *Noble Mortg.*, 340 S.W.3d at 76. Constructive notice is notice the law imputes to a person not having personal information or knowledge. *Madison*, 39 S.W.3d at 606; *Noble Mortg.*, 340 S.W.3d at 76. Constructive notice creates an irrebuttable presumption of actual notice in some circumstances. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998); *Noble Mortg.*, 340 S.W.3d at 76.

As a general rule, an "instrument that is properly recorded in the proper county is . . . notice to all persons of the existence of the instrument." TEX. PROP. CODE ANN. § 13.002 (West 2014). Recorded instruments in a grantee's chain of title generally establish an irrebuttable presumption of notice. *Ford v. Exxon Mobil Chem. Co.*, 235 S.W.3d 615, 617 (Tex. 2007); *Noble Mortg.*, 340 S.W.3d at 76; *see also HECI Exploration Co.*, 982 S.W.2d at 887 ("The need for stability and certainty regarding titles to real property has led courts to hold that real property records can constitute constructive notice."); *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 908 (Tex. 1982) ("It is well settled that 'a purchaser is bound by every recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims.'"). A person may also be charged with constructive notice for a deed outside his chain of title if facts appearing in the chain of title through which he claims would place a reasonably prudent person on inquiry as to the rights of other parties in the property conveyed. *Aston Meadows, Ltd. v. Devon Energy Prod. Co., L.P.*, 359 S.W.3d 856, 859 (Tex. App.—Fort Worth 2012, pet. denied); *Noble Mortg.*, 340 S.W.3d at 76; *Nguyen v. Chapa*, 305 S.W.3d 316, 324–25 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

"'Chain of title' has been defined to be '[t]he successive conveyances, commencing with the patent from the government, each being a perfect conveyance of the title down to and including the conveyance to the present holder.'" *Noble Mortg.*, 340 S.W.3d at 80 (quoting *Reserve Petroleum Co. v. Hutcheson*, 254 S.W.2d 802, 806 (Tex. Civ. App.—Amarillo 1952, writ ref'd n.r.e.)). Under Texas law, a subsequent creditor or purchaser is only deemed on constructive notice of recorded documents within its direct chain of title that either reveal the interests of another, or that contain recitals that would put a prudent purchaser on inquiry notice

11

of another's interest outside the chain of title. *See id.* (citing *Walters v. Pete*, 546 S.W.2d 871, 874 (Tex. Civ. App.—Texarkana 1977, writ ref'd n.r.e.) ("The deed under which Appellee Pete claims was not in Appellant Walters' chain of title and since the Ray–Delamer–Pete deeds contained no ambiguities on their faces which would put Walters on inquiry about Pete's claim, the mere registration of those deeds would not constitute constructive notice that Pete was claiming the land to which Walters had secured a deed.")).  In other words, absent ambiguities on the face of a deed, a subsequent purchaser is "not required to look any further than his own chain of title to determine whether or not he was acquiring good title to his property." *Id.*

**Discussion**

Independent of the statutory requirements, Ovation argues that FGMS Holdings or FGMS Fund V should have received notice of the Cause No. 24,465-B and joined therein as a party to satisfy their due process rights.  Without such notice and joinder, its argument continues, the transferred tax lien it services on FGMS Holding's behalf is unaffected by the judgment in Cause No. 24,465-B and it may proceed to collaterally attack that judgment in this case.

To support Ovation's argument that it was entitled to bring this suit, it relies on *Security State Bank & Trust v. Bexar County*.  There, the bank brought a lawsuit challenging a tax sale of property.  397 S.W.3d at 717-18.  The court of appeals held that the tax judgment and sale were void as to the bank, the bank could collaterally attack the prior judgment and sale, and proceed to enforce its lien. *See id.* at 724.  Critically however, the bank was a record lienholder at the time the tax suit was filed and the sale occurred that had not received notice of, nor been made a party to, the delinquent tax lawsuit. *See id.* at 717–18.

Richard argues that this case is more similar to *Am. Homeowner Pres. Fund, LP v. Pirkle*, 475 S.W.3d 507, 514 (Tex. App.—Fort Worth 2015, pet. denied).  In *Pirkle*, SF3 held the recorded lien at the time the tax collection suit was filed, and it was not made a party to the lawsuit. *See id.* at 510. SF3 later assigned its lien to American Homeowner Preservation Fund. *Id.*  The court distinguished *Security State Bank*, where the bank was record lienholder when suit was filed, stating that when American received the assignment from SF3, "the constable's deed had been on file in the deed records for 65 days, the judgment ordering the tax sale had been on file for 188 days, and the tax suit had been on file for 2 years and 65 days prior to the assignment." *Id.* at 515.  The court in *Pirkle* further stated as follows:

> It is undisputed that SF3 was the record lienholder on the property at the time of the tax sale. As such, SF3 should have been joined in the lawsuit as a party and afforded an opportunity to protect its property interest. Because it was not joined in the delinquent tax lawsuit, SF3 was not legally bound by the judgment or the tax sale. Following **Security State Bank**, SF3 could have side-stepped the mandates of the tax code and collaterally attacked the tax judgment to set aside both the judgment and tax sale as to its lien interest.
>
> But SF3 did not do this. Instead, three months after the tax sale, SF3 assigned its lien to American, which, as discussed above, purchased the assignment with an irrebuttable presumption of notice of the intervening tax sale. Since American was not a record lienholder and had no ownership interest in the property at the time of the tax judgment and tax sale, American possessed no due-process rights to notice or service of the delinquent-tax lawsuit or the subsequent sale. American was afforded its own due process rights as a subsequent purchaser of SF3's interest in the property when it purchased the assignment with notice of the intervening tax sale. Whether American, as SF3 's successor in interest, could likewise disregard the tax code depends wholly upon whether American has standing to assert SF3's right to due process.

*Id.* at 516 (internal citations omitted).

In **Pirkle**, the court went on to hold that American, the successor in interest to the transferred tax lien, was unable to assert the due process rights of its predecessor in title to the lien, SF3. *Id.* at 526. American was therefore required to comply with the statutory provisions in the Texas Tax Code in order to collaterally attack the tax court judgment, which it failed to timely do.[3] *See id.* at 513-14. Because its lien was acquired after the tax judgment and tax sale, it was bound by that judgment and sale and did not inure to the benefit of the prior lienholder's due process rights. *See id.* at 526. Here, the transferred tax lien serviced by Ovation was not held by a record lienholder within the chain of title, and as we have stated, the lien is the same as that held by MLS. Therefore, as in **Pirkle**, any due process rights Ovation possesses are derivative of the rights of the record lienholder—MLS. *See id.*

The question here thus becomes whether the taxing units acquired actual or constructive knowledge of Ovation's interest such that notice and joinder was required as a matter of due process. MLS was the record lienholder at the time the tax collection suit in Cause No. 24,465-B was filed. Ovation cites no evidence that the taxing units had actual notice of its interest. On the contrary, the "Transfer of Lien" document creating the direct link in the chain of title from MLS to FGMS V, establishing a perfect conveyance of title to the present holder FGMS Holdings, serviced by Ovation, did not exist until 2019. Although the parties attempted to make this 2019 document "effective as of March 23, 2012," it was executed over a year after Richard acquired

---

[3] For example, the court in **Pirkle** discussed American's duty to comply with statutory rules concerning deposit of delinquent amounts and limitations in order to collaterally attack the tax sale. *See Pirkle*, 47 5 S. W 3d at 516 (citing TEX. TAX CODE ANN. §§ 33.54, 34.08 (West 2015)).

title to the property at the sheriff's sale and Ovation filed this suit. Moreover, this "Transfer of Lien" is unrecorded in the Smith County Official Records.

Ovation nevertheless contends that the "Collateral Assignment of Tax Liens and Related Liens" to Capital One, along with the "Transfer of Lien" from FGMS Fund V, LP to FGMS Holdings, LLC, both executed and recorded in 2015, provided constructive notice to the taxing authorities of FGMS Holding's alleged lien and interest in the property. We disagree. These documents, although recorded, are outside the direct chain of title, and did not put the taxing units on constructive notice of these interests. *See Aston Meadows*, 359 S.W.3d at 859; *Noble Mortg.*, 340 S.W.3d at 76; *Nguyen*, 305 S.W.3d at 324–25. Furthermore, there are no recitals or references contained within MLS's recorded transferred tax lien documents that would put a reasonable person on inquiry notice that competing interests existed as to the lien. *See id*; *see also Hahn v. Love*, 394 S.W.3d 14, 26 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). Finally, although the taxing units had no obligation to discover the 2015 transactions, as we described earlier in this opinion, even these documents evidencing the transactions contain inaccurate information. Accordingly, the taxing authorities had no actual or constructive notice of the tax lien transfer from MLS to FGMS V or the subsequent recorded 2015 transactions occurring outside the chain of title. *See Pirkle*, 47 5 S. W 3d at 526; *see also Gamble v. Martin*, 151 S.W. 327, 329-30 (Tex. Civ. App.—El Paso 1912, writ ref'd) (holding junior lienholder with recorded interest disconnected from chain of title is not necessary party to foreclosure suit, and his rights to enforce lien are barred, when parties to suit had no notice of his interest at time foreclosure suit was filed and judgment entered).

Therefore, Ovation was not entitled to notice and joinder in Cause No. 24,465-B, it is bound by the judgment in that case, it is unable to collaterally attack that judgment in this case, and Richard, as a bona fide purchaser for value at the sheriff's sale, has title to the property free of the transferred tax lien serviced by Ovation.

Ovation's fifth through eighth issues are overruled.

## DISPOSITION

We have sustained Ovation's first issue, but it does not affect the trial court's judgment. Having overruled its second through eighth issues, the judgment of the trial court is *affirmed*.

14

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered March 31, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

15



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 31, 2021**

**NO. 12-20-00011-CV**

**OVATION SERVICES, LLC,**
Appellant
V.
**EDRES JOSEPH RICHARD, JR.,**
Appellee

Appeal from the 7th District Court
of Smith County, Texas (Tr.Ct.No. 18-1518-A)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **OVATION SERVICES, LLC,** and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*